DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Mary Monica Zietler, appeals from a decision of the Lorain County Court of Common Pleas, Division of Domestic Relations, which denied her objection and adopted the magistrate's recommendation on the award of increased child support. We affirm.
 I. {¶ 2} Ms. Zietler was divorced from Appellee, Christopher L. Zietler, in December 1996. At that time, Ms. Zietler was employed at an income of $44,000 per year. Mr. Zietler's annual income was approximately $104,000. As an outcome of the divorce, in addition to the division of the marital property, Ms. Zietler received additional income of $3,371.73 per month for 36 months ($121,382.30) as an independent consultant to the marital business; $1,877.54 per month for 20 months ($37,550.80) in spousal support; and $1,244.91 per month in child support. The Zietler's have two children, currently ages 15 and 13, and a shared parenting arrangement.
 {¶ 3} In December 2002, the Lorain County Child Support Enforcement Agency (CSEA) initiated a review of the parents' financial conditions, with the intent of adjusting the child support payments. The review revealed that Mr. Zietler's income in tax years 2000, 2001 and 2002 was $340,000, $328,000 and $543,000, respectively. Correspondingly, Ms. Zietler, who had abandoned her prior career to pursue a job as a substitute teacher, reported decreasing income of $21,700, $17,500 and $16,000 for those three years, respectively. The review also established that Mr. Zietler had active visitation with his children and invested significant money towards their standard of living and well being, such as vacations, clothing, laptop computers, bicycles, go-carts, musical instruments and lessons, braces, parochial school tuition ($3,500 per year), $500 per month towards a college fund IRA, etc. Mr. Zietler even offered that he would pay for the children to vacation with Ms. Zietler, if she would merely document the costs. In short, he had never refused a request.
 {¶ 4} Based on the sum of its findings, the CSEA recommended an increase in child support from $1,244.91 per month to $1,659.96 per month, which is an increase of 33%. But, Ms. Zietler objected to this recommendation, and sought additional support. After two hearings, the magistrate documented her findings, overruled Ms. Zietler's objections, and recommended the same amount as CSEA: $1,659.96 per month. Ms. Zietler further objected to the trial court. The trial court reviewed the record under a plenary standard of review and adopted the magistrate's recommendation, thereby denying Ms. Zietler's objections.
 {¶ 5} Ms. Zietler now appeals from the trial court's decision. She asserts two assignments of error for review.
 II. A. First Assignment of Error
"The trial court erred in failing to order an upward deviation in child support where the parties' combined gross incomes exceed $150,000.00 in effect treating the $150,000.00 figure as a cap on the amount of child support to be awarded."
 {¶ 6} Ms. Zietler asserts that the trial court erred in calculating its award of child support, alleging that the trial court either misinterpreted or misapplied the particular statutory provisions. Specifically, she alleges that the procedure used effectively capped the child support award at the maximum produced by the statute's calculation schedule and worksheets, an amount equivalent to that produced by $150,000 in aggregate gross income; or that the court erroneously failed to apply an upward adjustment. We disagree.
 {¶ 7} Although both parties have designated abuse of discretion as the appropriate standard of review in this case, we find that we are actually first called upon to interpret the statute. In such a case:
"`the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.'" State v. Hairston, 101 Ohio St.3d 308,2004-Ohio-969, at ¶ 12, quoting Slingluff v. Weaver (1902),66 Ohio St. 621, paragraph two of the syllabus.
Upon finding a proper application of the statute, the ensuing decisions regarding the child support obligations are within the discretion of the trial court and will not be disturbed without an abuse of discretion. Rock v. Cabral (1993),67 Ohio St.3d 108, syllabus. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable," Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, it is a "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Id.
 {¶ 8} On a plain reading of the child support statute, R.C. chapter 3119, we begin by noting that the applicable provisions set forth the procedure for determining the appropriate child support obligations based on three distinct tiers of the parties' annual aggregate gross income: (1) less than $6,600; (2) between $6,600 and $150,000; and (3) greater than $150,000. For the first tier, less than $6,600: the court is to determine the appropriate child support on a case-by-case basis considering qualitative factors and considering the calculation worksheet as a guide; that is, the court is not required to apply the worksheet results. R.C. 3119.04(A). For the second tier, between $6,600 and $150,000: "the court * * * shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions"; that is, the court must use and apply the worksheet. R.C. 3119.02. For the final tier, above $150,000: the court once again determines the appropriate child support on a case-by-case basis, and again is not required to apply the calculation worksheet. R.C. 3119.04(B). Use of the worksheet in this tier is directed to calculating a hypothetical child support amount that is equivalent to the amount an obligor would pay if the couple had an aggregate gross income of $150,000 or more (hereafter referred to as "the $150,000-equivalent"). In this third tier, the court is bound by three requirements: (1) set the child support amount based on the qualitative needs and standard of living of the children and parents; (2) ensure that the amount set is not less than the $150,000-equivalent, unless awarding the $150,000-equivalent would be inappropriate (i.e., would be too much); and (3) if it decides the $150,000-equivalent is inappropriate or unjust (i.e., awards less), then journalize the justification for that decision. R.C. 3119.04(B). There is nothing in this statute to suggest that the trial court must award more than the minimum amount. Cf. Gerlach v. Gerlach,
10th Dist. Nos. 03AP-22 03AP-872, 2004-Ohio-1607, at ¶ 11.
 {¶ 9} Because we review the application of this statute for abuse of discretion, we need only find a reasonable theory for the trial court's conduct, and conclude that the decision was not unreasonable, arbitrary or unconscionable. Thus, we review each of R.C. 3119.04(B)'s three requirements. (1) In the present case, the trial court (and the magistrate and the CSEA) compiled the evidence and testimony and, considering the needs and standard of living, set some amount of child support. For example, we can infer that the court initially selected the preexisting amount of $1,244.91 per month.[1] (2) Then, the trial court determined the $150,000-equivalent, which was calculated to be $1,659.96 per month. Because the initial selection ($1,244.91 per month) was below the $150,000-equivalent ($1,659.96 per month), the court re-set its selected amount to the $150,000-equivalent: $1,659.96 per month. Thus, the $150,000-equivalent served its intended purpose as the minimum child support award, below which the court cannot go without explanation. (3) Because the court did not deem the $150,000-equivalent to be inappropriate or unjust (i.e., the award was not inappropriately too large) and did not modify its decision so as to award less, the court did not need to journalize that decision. See R.C. 3119.04(B). Based on a plain reading of the statute and reasonable inferences of the trial court's decision making, the approach and outcome fall within the prescription of the statute.
 {¶ 10} We disagree with the contention that the trial court effectively capped the child support at the $150,000-equivalent. Rather, we find that the court, in conducting a plenary review of the magistrate's decision and holding additional hearings, considered the entire record and qualitatively set a child support award, which also factored in a minimum amount as established by the $150,000-equivalent. In her brief to this Court, Ms. Zietler urges us to follow two Fifth District cases in her attempt to further her proposition that the trial court should be reversed because it effectively capped the award using the $150,000-equivalent. See Deasey v. Deasey, 5th Dist. No. 02 CAF 09 044, 2003-Ohio-3576; Peterson v. Peterson, 5th Dist. No. 02COA059, 2003-Ohio-4189. However, we find the holdings of each of these cases to be consistent with our above interpretation: directing a qualitative determination on a case-by-case basis, considering the whole record, and refuting a cap or mandatory worksheet calculation. See Deasey at ¶ 12-15; Peterson at ¶ 22.
 {¶ 11} Ms. Zietler's second argument under this assignment of error is that the court erroneously failed to apply an upward deviation. We begin by reemphasizing that under R.C. 3119.04(B) there is no basis for "deviation," as the R.C 3119.04(B) method prescribes that child support is to be set based on the qualitative needs and standard of living of the children and parents, not exacting calculations and deviations. The statute does not prevent such consideration, and in its judgment entry, the trial court clearly addressed, considered and discussed the propriety of deviation and the applicable factors. Therefore, we will also address this argument, but as we find that it corresponds with Ms. Zietler's second assignment of error, we will address it in the section below.
 {¶ 12} Ms. Zietler's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred in failing to consider all appropriate factors as set forth in ohio revised code Sections 3119.04 and3119.23 in overruling the objections to the magistrate's decision and in failing to order an upward deviation in the amount of child support to be paid where the parties' combined gross incomes exceed $150,000.00."
 {¶ 13} Ms. Zietler asserts that the trial court erred by failing to consider the factors and criteria pertinent to an upward deviation, despite the judgment entry's quotation of certain applicable factors and its lengthy recitation of financial considerations. In fact, Ms. Zietler accuses the court of completely ignoring these financial matters. We disagree.
 {¶ 14} Once again, we begin with a plain reading of the applicable statute, which states in pertinent part:
"The court may order an amount of child support that deviates * * *, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated * * * would be unjust or inappropriate and would not be in the best interest of the child.
"If it deviates, the court must * * * [adhere to certain requirements]." R.C. 3119.22.
Thus, we are immediately confronted with the word "may." The provision does not say "must" or "shall" or "should." The court is therefore under no obligation to deviate, no matter what its findings may be. That is, even if the court finds that the amount "would be unjust or inappropriate and would not be in the best interest of the child" the court is still not required to deviate. See R.C. 3119.22. Furthermore, because the decision to deviate is discretionary, the consideration of factors cannot be mandatory. See id. If the court chooses not to deviate, it need not consider the R.C. 3119.23 factors. Finally, we are further persuaded by the language of R.C. 3119.23, which also uses such language of discretion: "The court may consider any of the following factors * * * [.]" (Emphasis added.)
 {¶ 15} However, in the present case, the court did consider and analyze certain factors before deciding not to deviate. The trial court considered the disparity in incomes, benefits to the parents from new living arrangements, significant contributions by the individual parents, and the appropriate standard of living. See R.C. 3119.23(G), (H), (J) (L). Ms. Zietler's complaint is not so much that she did not agree with the method of the trial court's decision as that she did not like the outcome. Ms. Zietler relies primarily on the disparity in income for her argument that she ought to receive more money. See R.C.3119.23(G). Ms. Zietler has made her intentions clear to the magistrate, the trial court and now in her briefs to this Court.
 {¶ 16} When questioned on her need for the extra money, Ms. Zietler indicated she would start college funds for her teenage children, despite the uncontested findings that Mr. Zietler contributes $500 per month to college savings plans and has acknowledged his intent to pay for their college. When questioned further, Ms. Zietler admitted that she would like a higher standard of living, she would like to buy nicer things, and she would like to take more expensive vacations. When confronted with the fact that Mr. Zietler has offered to pay for her vacations with their children and has never refused a request, Ms. Zietler responded that Mr. Zietler should have to pay for these things without being asked. Neither the magistrate nor the trial court was persuaded by this argument.
 {¶ 17} Beyond its lengthy recitation of Mr. Zietler's financial contributions to his children, the trial court makes much of its finding that Ms. Zietler's total monthly expenses are $1,468 while she nevertheless protests that the award of $1,659.96 per month is insufficient. Also, at the time of the divorce she earned $44,000 per year in the medical technology field, but left that field to pursue a career as a substitute teacher, reporting decreasing annual incomes of $21,700 to $17,500 to $16,000 for the past three years. This suggests the type of situation where one has the luxury of working a job without concern for the associated income. See, e.g., Julian v.Julian, 9th Dist. No. 21616, 2004-Ohio-1430, at ¶ 15-17 (Carr, J., dissenting).
 {¶ 18} With its focus properly on the matter of child support, the trial court concluded: "There was ample evidence to show that [these] children want for very little." Thus, following the applicable statute, and after a lengthy discussion of the proper criteria, the trial court awarded an amount it deemed appropriate, and in so doing refused any deviation from the minimum. See R.C. 3119.04(B). Ms. Zietler may disagree with the statute, but the plain wording of the statute is the province of the legislature, not this Court. See State v. Ross, 12th Dist. No. CA2001-10-078, 2002-Ohio-3880, at ¶ 12; Southern Surety Co.v. Std. Slag Co. (1927), 117 Ohio St. 512, 519.
 {¶ 19} The trial court chose not to deviate and furthermore articulated the basis for its decision. As this choice was within the discretion of the trial court, we find no abuse of discretion in this case.
 {¶ 20} Ms. Zietler's second assignment of error is overruled.
 III. {¶ 21} Ms. Zietler's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Boyle, J., concur.
[1] One could just as easily infer that the court initially selected the amount of Ms. Zietler's total monthly expenses: $1,468 per month. This would also be below the minimum set by the $150,000-equivalent.