[Cite as *Melick v. Melick*, 2013-Ohio-1418.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| JEFFREY MELICK | C.A. No. 26488 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THERESE MELICK | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. 2002-04-1624 |

DECISION AND JOURNAL ENTRY

Dated: April 10, 2013

HENSAL, Judge.

{¶1} Plaintiff-Appellant, Jeffrey Melick, appeals from the May 21, 2012, judgment entry of the Summit County Court of Common Pleas. For the reasons set forth below, this Court affirms.

I.

{¶2} Jeffrey Melick ("Father") and Therese Melick ("Mother") divorced in 2003. Mother was named residential parent of the parties' autistic minor child pursuant to a shared parenting plan that allowed Father visitation every other weekend from Saturday morning to Sunday evening plus up to three weeks of vacation time per year. In addition, Father paid $1,000 per month in child support. The parties filed an agreed entry in 2007 that increased Father's visitation to also include Friday evening, decreased vacation time, and maintained child support at the same amount.

{¶3} In September 2010, Mother filed a motion to show cause because Father never exercised his vacation time. While a full hearing was not held on Mother's motion until June 2011, the magistrate assigned to the case held a hearing in November 2010 and issued an order that Father "shall" exercise all court ordered parenting time. In April 2011, Mother filed a motion to modify the child support order on the basis of a change in income and an anticipated increase in child care costs due to Father's intention to cease overnight visitation with the child.

{¶4} In June 2011, Father filed a motion to disqualify the magistrate pursuant to Civil Rule 53(D)(6) on the grounds that the magistrate was biased and had prejudged the case. The trial court denied the motion and the case proceeded to an evidentiary hearing before the magistrate on Mother's pending motions to show cause and modify child support. On August 1, 2011, a magistrate's decision and judgment entry adopting the decision was issued that increased child support to $1,863.75 per month, but did not hold Father in contempt. Father filed timely objections to the decision, most of which were overruled. Father filed a timely appeal of the judgment entry overruling his objections and he raises four assignments of error.

II.

**STANDARD OF REVIEW**

{¶5} "This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." *Young v. Young*, 9th Dist. No. 25640, 2011-Ohio-4489, ¶ 5. An abuse of discretion "implies that the trial court's attitude [was] unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Although the trial court has discretion when finding facts and applying those facts to the law, the trial court commits an error of law if it does not follow the law." *Foster v. Foster*, 9th Dist. No.

09CA0058, 2010-Ohio-4655, ¶ 6.    Issues of law are reviewed de novo.  *Butler v. Butler*, 9th Dist. No. 22087, 2004-Ohio-7164, ¶ 11.

## FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT BOTH ERRED AS A MATTER OF LAW BY FAILING TO APPLY THE LEGAL STANDARD TO, AND ABUSED ITS DISCRETION BY DENYING, FATHER'S MOTION TO DISQUALIFY THE MAGISTRATE WHERE AN OBJECTIVE OBSERVER WOULD HARBOR SERIOUS DOUBTS ABOUT THE MAGISTRATE'S IMPARTIALITY.

{¶6}    Father argues that the trial court failed to apply the correct legal standard when it decided his motion to disqualify the magistrate, and that the denial of his motion was an abuse of discretion.  The magistrate was first assigned to the case on October 18, 2007.  In June 2011, Father moved to disqualify the magistrate pursuant to Civil Rule 53(D)(6) on the basis of comments he allegedly made to the attorneys that concerned his personal experience parenting an autistic child and going through a divorce.  These comments were allegedly made during a conference with the attorneys who were present for an unspecified prior hearing.  Father argues that the magistrate is biased against him because of his decision to terminate overnight visitation with his son.  Father made his decision based on safety concerns after his son exhibited aggressive behavior toward Father's new family.  Father points to the magistrate's decision to increase child support as the manifestation of that bias in that it "financially penalized" him for not exercising visitation.

{¶7}    "As there is no specific statutory provision addressing disqualification of a magistrate, the question of removal of a magistrate should be left to the sound discretion of the [trial] judge[.]"  *Hayne v. Hayne*, 9th Dist. No. 07CA0100-M, 2008-Ohio-4296, ¶ 39, quoting *In re Grubbs*, 5th Dist. No. 07CA2, 2007-Ohio-5807, ¶ 20.  Father maintains that the trial court should have decided his motion by determining if a "reasonable and objective observer would

harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, ¶ 8.

{¶8}    Prior to filing the motion to disqualify pursuant to Civil Rule 53(D)(6), Father's attorney sent a letter to the magistrate that stated, "Right or wrong, my client was left with the distinct impression that your usual impartiality 'might reasonably be questioned' in this case based on your 'personal knowledge of facts', as those phrases are used in Rule 2.11(A)(1) of the Code of Judicial Conduct." The judgment entry denying Father's motion, which was signed by both the judge and magistrate, stated that "[t]he Court has no acquaintance with or bias toward either party * * *, and has no personal knowledge of the facts in dispute[.]" The trial court was apparently guided to Rule 2.11 of the Ohio Code of Judicial Conduct by Father's attorney, as this is the Rule referenced in the letter written to the magistrate. This Rule provides that: "A judge shall disqualify himself * * * [if] the judge's *impartiality* might reasonably be questioned, including but not limited to the following circumstances:  (1) The judge has a personal bias or prejudice concerning a party * * *, or personal *knowledge* of facts that are in dispute in the proceeding." (Emphasis sic.)  The trial court did not err as a matter of law when it used language in Rule 2.11 to deny Father's motion, especially when Father directed the trial court to that Rule when he asked the magistrate to disqualify himself.

{¶9}    Since a magistrate is presumed not to harbor bias or prejudice against any party in a proceeding, "the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity." *Barnett-Soto v Soto*, 9th Dist. No. 02CA0011-M, 2003-Ohio-535, ¶ 23.  Although Father alleged a conversation implicating bias occurred between the magistrate and attorneys, he did not submit any evidence to substantiate this allegation such as an affidavit from his attorney at the time.  The only evidence submitted to the trial court in support of the

motion was the letter written by his current attorney to the magistrate that requested he disqualify himself and information printed from a website that listed the magistrate as a board member of a local autism society chapter. Based on the lack of evidence in the record demonstrating bias by the magistrate as well as the absence of even an assertion that the magistrate had prior or contemporaneous personal knowledge of the facts disputed by the parties or of the parties themselves, this Court finds that the trial did not abuse its discretion in denying Father's motion to disqualify.

{¶10} Finally, Father argues that the trial court judge had a "more emotional basis for denying the motion" because she criticized Father's renewed objection to the magistrate's assignment after the motion to disqualify was denied. To the extent that Father is arguing that the trial court's decision should be vacated due to judicial bias and prejudice, we note that this Court has no jurisdiction to vacate a trial court's judgment on a claim of judicial bias and cannot address any arguments made on that basis. *Catanzarite v. Boswell*, 9th Dist. No. 24184, 2009-Ohio-1211, ¶ 8-9; *Conti v. Spitzer Auto World Amherst, Inc.*, 9th Dist. No. 07CA009121, 2008-Ohio-1320, ¶ 24.

{¶11} For the foregoing reasons, Father's first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

> THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT INCREASED FATHER'S CHILD SUPPORT OBLIGATION WHEN THERE WAS NO THRESHOLD FINDING OF A "SUBSTANTIAL CHANGE OF CIRCUMSTANCES" BY THE MAGISTRATE AND, ON OBJECTIONS, THE TRIAL COURT ATTEMPTED TO FILL THE VOID WITH FACTS THAT WERE "CONTEMPLATED AT THE TIME OF THE ISSUANCE OF THE ORIGINAL CHILD SUPPORT ORDER OR THE LAST MODIFICATION OF THE CHILD SUPPORT ORDER."

{¶12} Revised Code Section 3119.79 sets forth the procedure for the court to use when asked to modify an existing child support order. The trial court used Revised Code Section 3119.79(C) when making its determination, which provides that:

> If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the * * * last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child * * *.

Father argues that the magistrate failed to make the finding of "substantial change of circumstances" required by Revised Code Section 3119.79(C). Father is correct that the magistrate's decision did not make that specific finding. The trial court judge, however, did apply Revised Code Section 3119.79 (incorrectly cited in the judgment entry as R.C. 3119.70) and found that a substantial change in circumstances occurred.

{¶13} Father also argues that the facts considered by the court in finding a substantial change in circumstances were anticipated at the time of both the original and 2007 child support orders. Specifically, the child always exhibited difficult behaviors, needed a caregiver and the parties' income remained approximately the same.

{¶14} The child was diagnosed with autism prior to the original 2003 order, but he was only nine years old at the time of the 2007 modification. His behavior was always "difficult," but his increase in size (he was twelve years old and five foot five, 136 pounds at the time of the 2011 hearing) made him a more formidable threat especially since the parties agree that the child was physically violent at times. When the child had a "meltdown," he would throw, hit or push. The child was "completely intolerant" of Father's new wife and toddler son, and became

physically aggressive toward them unexpectedly and for no reason. The child just started counseling at the time of the hearing due to the deterioration of his behavior and the onset of puberty.

{¶15} Between 2003 and 2011, Father exercised his overnight visitation. In April 2011, Father stopped taking the child overnight due to his aggressive behavior toward Father's new family. Father instead spent time with his son apart from his new family every other weekend for a few hours at a time.

{¶16} Because Father ceased overnight visits and the child could not be left alone, Mother, who worked full time and lived alone with the child, relied on caregivers to watch the child while she attended to household and personal needs. Mother's regular list of caregivers was not available on nights and weekends at the same hourly rate she usually paid for work-related child care. While both parties were making approximately the same amount of money as they were in 2007, Mother could not afford the cost of more frequent child care necessitated by Father's cessation of overnight visitation absent an increase in support.

{¶17} Father's change in family circumstances, the physical risks posed by the child's behavior, and the less frequent visitation that necessitated additional child care, all demonstrate a substantial change in the family's situation. The trial court did not err in finding a substantial change in circumstances not contemplated by the parties at the time of the 2007 judgment entry. Father's second assignment of error is overruled.

### THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW IN APPLYING R.C. 3119.04(B) WHERE THE PARTIES' COMBINED INCOME EXCEEDED $150,000 BY USING THE CHILD SUPPORT WORKSHEET FOR PURPOSES OTHER THAN COMPUTING THE "$150,000-EQUIVALENT."

{¶18} Father maintains that the trial court failed to follow the procedure set forth in Revised Code Section 3119.04(B) by not first calculating what the child support amount would be if the total of both parents' gross income was equal to $150,000. He argues that by not calculating this equivalent, it is unclear whether the "upward deviation" in support was appropriate.

{¶19} This Court notes that Father failed to specifically raise this argument in his objections to the magistrate's decision, and raises it for the first time on appeal. Father filed both preliminary and supplemental objections to the magistrate's decision. His supplemental filing contained an objection to the use of the worksheet to determine the base amount of child support prior to the adjustment for additional child care since the parties' income exceeded $150,000. Now Father is arguing that the court should have instead used the worksheet to calculate the equivalent child support as if the parties' total gross income was $150,000.

{¶20} Civil Rule 53(D)(3)(b)(iv) provides that: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R.53(D)(3)(b)." "[T]he plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, syllabus (1997).

{¶21} Revised Code Section 3119.04(B) provides that:

If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less

than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

The calculation for a combined gross income of $150,000 provides the starting point for the trial court to determine the amount of child support in higher income situations. *Bajzer v. Bajzer*, 9th Dist. No. 25635, 2012-Ohio-252, ¶ 5. Because child support for parents with higher incomes is calculated on a case-by-case basis, there is no requirement to apply the calculation worksheet. *Zeitler v. Zeitler*, 9th Dist. No. 04CA008444, 2004-Ohio-5551, ¶ 8.

**{¶22}** This Court concludes that the trial court did not commit plain error by using the child support worksheet to calculate the base amount of support rather than the $150,000 equivalent. There is no dispute that the combined gross income of the parties exceeded $150,000, thus, there is no requirement to apply the worksheet. Father does not claim that the court used the wrong income figures or that the final support award was less than what would have resulted from the $150,000 equivalent calculation thereby requiring the court to give further explanation as to the amount of support ordered. Accordingly, Father's third assignment of error is overruled.

**FOURTH ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED AN APPROXIMATELY 80% UPWARD DEVIATION IN CHILD SUPPORT FROM THE ALREADY INFLATED BASE SUPPORT CALCULATION AND DID SO BASED ON THE "BEST INTEREST OF THE MOTHER" RATHER THAN THE "BEST INTEREST OF THE CHILD" AND DID SO BASED ON A FINDING THAT WAS NOT JUST AGAINST THE MANIFEST WEIGHT TO (SIC) THE EVIDENCE BUT WAS CONTRARY TO THE ONLY EVIDENCE.

**{¶23}** Father challenges the trial court's finding that the increased child support is in the best interest of the child. He argues that the evidence in the record demonstrates only what is in Mother's best interest.

**{¶24}** The Ohio Supreme Court recently clarified that "[t]he sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. "'Sufficiency' is a term of art meaning that legal standard which is applied to determine * * * whether evidence is legally sufficient to support a [a finding] as a matter of law." *Raykov v. Raykov*, 9th Dist. No. 26107, 2012-Ohio-2611, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). It is, therefore, a test of adequacy. *Thompkins* at 386.

**{¶25}** "Nevertheless, even if a trial court judgment is sustained by sufficient evidence, an appellate court may * * * conclude that the judgment is against the manifest weight of the evidence:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

(Emphasis deleted.) *Eastley* at ¶ 12, quoting *Thompkins* at 387. Thus, "manifest weight of the evidence" pertains to the burden of persuasion. *Id*. at ¶ 19.

**{¶26}** While Father's assignment of error is couched in terms of challenging the manifest weight of the evidence, the substance of his argument suggests Mother lacked any evidence to support her burden with regard to what was in the child's best interest concerning

professional child care providers. As such, this Court will analyze his argument using the sufficiency standard.

{¶27} Because Revised Code Section 3119.04(B) bases the child support amount on the needs of the child and the parents rather than "exacting calculations and deviations," so long as the support is greater than the $150,000 equivalent, there is no true starting point for deviation. *Zeitler*, 2004-Ohio-5551 at ¶ 11. Revised Code Section 3119.04(B) does not, however, prevent consideration of the factors normally applicable when the trial court finds deviation appropriate. *Id*. As such, this Court will address the appropriateness of the amount under the factors utilized by the trial court.

{¶28} If the court decides to deviate from the calculation worksheet, the "court shall consider extraordinary circumstances and other factors or criteria if it deviates * * * and shall enter in the journal * * * its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination." Revised Code Section 3119.24(A)(2). R.C. 3119.24(B) defines "extraordinary circumstances of the parents" to include (1) the amount of time the child spends with each parent, (2) the ability of each parent to maintain adequate housing for the child, (3) each parent's expenses, including child care expenses, and (4) any other circumstances the court considers relevant.

{¶29} The trial court found that the child support calculation from the worksheet was "unjust and inappropriate" due to the fact that Mother spends nearly 100% of the time with the child as a result of Father's decision to cease overnight visitation, the necessity of maintaining the child's current home, and the increased child care cost associated with Father's decision.

{¶30} Father argues that Mother failed to produce any evidence that it is in the child's best interest to have professional caregivers. Mother's team of regular caregivers for the child

included family members, as well as older high school and college students. Other than family members, these caregivers were the child's aides at school or had experience with special needs children. She paid these individuals $5.00 per hour to watch the child during the day, but they were not available on evenings and weekends for the same rate. The evidence submitted by Mother indicated that she pays $7,225.00 per year for this work-related child care which did not include any additional cost associated with childcare resulting from Father's decision to cease visitation. Mother used these types of caregivers as they were "bigger and stronger and more forceful" in dealing with the child who exhibited aggressive physical behaviors. Mother intended on using professional individuals and agencies from a list provided to her by the Summit County Board of Developmental Disabilities for the times in which a regular caregiver was not available. There is ample evidence in the record to suggest that the child has significant needs that require a caregiver who can appropriately manage his behaviors. As such, Mother produced sufficient evidence to demonstrate that it was in the child's best interest to have a professional caregiver.

{¶31} Father also argues the court's finding that the cost of such care was $10.75 (mistakenly typed "$10.35" in the judgment entry and used by Father in his brief) per hour is against the manifest weight of the evidence, when Mother testified that she only paid $5.00 per hour. Mother stated that her regular list of caregivers would not be available to care for the child on evenings and weekends at the rate of $5.00 per hour. The child was eligible for a minimal amount of family support funding from the Summit County Board of Developmental Disabilities, which calculated respite care at the rate of $10.75 per hour when determining the level of funding eligibility. Mother further testified that she could not afford to pay a caregiver for the extra time at the higher rate without an increase in child support. This Court finds that it

was not against the manifest weight of the evidence for the trial court to conclude that the cost of a specially trained caregiver was $10.75 per hour.

{¶32} The trial court arrived at the final child support number by calculating the number of hours Father forfeited in parenting time multiplied by $10.75 per hour and then dividing by half so that the cost was shared by both Mother and Father. This Court cannot say that the trial court erred as a matter of law or abused its discretion by utilizing this method to arrive at a child support amount as the trial court decision included the manner and reasons for doing so based on the findings of fact.

{¶33} Based upon the foregoing, there was sufficient evidence to support the trial court's finding that an increase in child support was in the best interest of the child. In addition, the trial court's decision was not against the manifest weight of the evidence and it did not error as a matter of law in calculating the revised child support amount. Father's fourth assignment of error is overruled.

III.

{¶34} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶35} I concur in the judgment. I agree that a substantial change in circumstances was demonstrated in this case, and, thus, I would overrule Mr. Melick's second assignment of error.

{¶36} With respect to Mr. Melick's third assignment of error, he forfeited the error by not raising it as an objection to the magistrate's decision. However, he has not argued plain error on appeal, and, given that the plain error doctrine in civil cases is "sharply limited to the *extremely rare* case involving *exceptional* circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself[,]" I would overrule his third assignment of error on that basis. (Emphasis sic.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997). Nevertheless, I note that the record contains a completed child-support worksheet, and Mr. Melick's arguments concerning that worksheet are unfounded.

APPEARANCES:

DEAN S. HOOVER, Attorney at Law, for Appellant.

DALE C. FENELI, Attorney at Law, for Appellee.