OPINION
{¶ 1} On May 8, 2002, plaintiff-appellant, Robert Baddour, filed a complaint in the Ohio Court of Claims alleging that his former employer, defendant-appellee, Rehabilitation Services Commission, through its agents Mary Gasser, Jeffrey Mackey, David Ott, Radene Mattheny, Kay Kelso, and John Downs, committed "unfair labor practices" in: 1) seeking to remove him from his position pursuant to a management plan which contained erroneous information regarding his job performance; 2) initiating a transfer from one job location to another without prior notification or official documentation; 3) initiating termination proceedings based upon events that occurred while he was on approved leave under the Family Medical Leave Act ("FMLA") in connection with complications resulting from his spina bifida; and 4) establishing call-in procedures separate from those in place for non-disabled similarly situated employees. Plaintiff further alleged that defendant interfered with his employment in violation of his constitutional rights.
 {¶ 2} On June 21, 2002, defendant filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(1), arguing that plaintiff's claims of unfair labor practices were subject to the exclusive jurisdiction of the State Employment Relations Board ("SERB"). Defendant further asserted that the court was without jurisdiction to consider plaintiff's constitutional claims. By entry filed July 18, 2002, the court granted defendant's motion as to the constitutional claims, but denied the motion as to the unfair labor practices claims on grounds that it could not determine conclusively from a review of the complaint that plaintiff had not filed a previous action with SERB. Thereafter, the court set the matter for trial.
 {¶ 3} On September 16, 2003, defendant filed a motion in limine seeking to prohibit plaintiff from introducing any evidence in support of claims for relief premised upon violations of the Americans with Disabilities Act ("ADA"), R.C. 4112.02, and the FMLA on grounds that plaintiff had not specifically identified those legal theories in his complaint. By entry filed October 9, 2003, the trial court denied the motion, finding the allegations set forth in the complaint sufficient to provide defendant fair and adequate notice of those claims.
 {¶ 4} On October 17, 2003, defendant filed a motion in limine seeking to prohibit plaintiff from introducing any evidence in support of his ADA, R.C. 4112.02, and FMLA claims on grounds they were precluded by collateral estoppel. In particular, defendant argued that plaintiff raised identical claims in federal court and all were dismissed with prejudice. The court reserved ruling on the motion until trial.
 {¶ 5} On October 20 and 21, 2003, the issues of liability and damages were tried before a magistrate. In a decision rendered on July 12, 2004, the magistrate construed plaintiff's complaint as alleging claims for unfair labor practices, disability discrimination in violation of the ADA and R.C. 4112.02, sex discrimination, FMLA violations, breach of a Last Chance Agreement ("LCA"), and constructive discharge. The magistrate further averred that plaintiff also sought immunity determinations, pursuant to R.C. 9.86 and 2743.02(F), as to the individuals named in the complaint.
 {¶ 6} The magistrate rendered the following factual findings. Plaintiff was born with spina bifida with a neurogenic bladder disorder which necessitated the use of a catheter. In 2001, he became afflicted with foot ulcers. In 1978, he began his employment with defendant as a Vocational Rehabilitation Counselor ("VRC"). He was a member of the Service Employees International Union ("SEIU") and, as such, was subject to a collective bargaining agreement between defendant and the union. His duties included assisting disabled persons to obtain job training and employment.
 {¶ 7} To prepare for a typical workday, plaintiff had to rise early, make certain his leg brace was functioning, check his feet for ulcers, lubricate his feet to prevent friction, and take medication for bladder management and to control back pain. He attempted to limit his walking time during the workday; during the winter, he had to be extremely careful while walking on ice and snow. He also had problems with mobility and driving when afflicted with the foot ulcers; however, the ulcers were not a permanent condition.
 {¶ 8} On March 5, 1999, plaintiff requested that defendant permit him flexibility in scheduling to compensate for FMLA-related absences resulting from side effects of high doses of antibiotics treatment as well as some flexibility, due to his limited mobility, in scheduling appointments with consumers and in travel time to appointments. Plaintiff also requested extensions of time on case deadlines. By letter dated March 25, 1999, defendant requested that plaintiff verify and support his request for accommodation with medical information and supply additional information about the issues plaintiff raised in his request. In response, on April 5, 1999, plaintiff explained that his request for scheduling flexibility pertained to sudden, recurrent and unexpected disability-related incidents related to side effects from the antibiotics. He also stated that he needed additional travel time in cases of inclement weather or when he experienced back pain flare-ups.
 {¶ 9} On May 18, 1999, defendant advised plaintiff to discuss his request for additional travel time with his supervisor, Mary Gasser, and to provide medical documentation in support of his request. Defendant further asserted that flexibility issues regarding deadlines on action plans due to absences covered by the FMLA would be referred to the human resource officer who coordinated FMLA matters.
 {¶ 10} At some point during 1999, Gasser disciplined plaintiff by placing him on a Performance Improvement Plan ("PIP") which outlined expectations for his caseload. Pursuant to the PIP, Gasser met with plaintiff on a weekly basis to review his caseload and monitor his progress; however, plaintiff's job performance did not improve. Gasser did not take plaintiff's physical limitations into consideration when placing him on a PIP because his job was primarily sedentary.
 {¶ 11} Gasser testified that, during the time she supervised plaintiff, he failed to interview applicants and file applications in a timely manner, failed to prepare timely written reports, and permitted case files to languish. Gasser also testified that she received numerous complaints from consumers about plaintiff's level of service.
 {¶ 12} In 2000, Kay Kelso became plaintiff's supervisor. Kelso worked at the central office; plaintiff worked at a different location. Kelso testified that she traveled to plaintiff's office one or two times per week to meet with him. According to Kelso, plaintiff often missed scheduled meetings both with consumers and with Kelso. In addition, Kelso received complaints from consumers about the quality of plaintiff's service.
 {¶ 13} On January 4, 2001, Kelso met with plaintiff and advised him to report any absences to her directly; if she was unavailable, Kelso was to contact the office manager, Denise Belcher. Kelso denied that she required plaintiff to travel to the central office or that she considered his medical condition when implementing the call-in procedure.
 {¶ 14} On February 16, 2001, plaintiff was issued a 10-day suspension for neglect of duty and caseload neglect. On March 26, 2001, Radene Mattheny, Human Resource Coordinator, met with plaintiff to discuss his excessive absenteeism. At the meeting, Mattheny questioned a medical excuse plaintiff submitted in support of an FMLA leave request on grounds that the return-to-work date appeared to have been altered.
 {¶ 15} Jeff Mackey, who supervised both Gasser and Kelso, testified that plaintiff was on a PIP in 1999, 2000, and 2001. Despite Mackey's efforts to help plaintiff improve his performance, plaintiff never successfully completed any of his PIPs. In September 2000, Mackey determined it would be beneficial to transfer plaintiff to the central office to be closer to Kelso; however, plaintiff opposed the transfer and it never occurred. In 2001, Mackey recommended that plaintiff be terminated due to poor job performance, consumer complaints, and noncompliance with the call-in procedure. In April 2001, John Downs, assistant agency director and supervisor of area managers, recommended that plaintiff be terminated based upon noncompliance with established call-in procedures.
 {¶ 16} Patricia Thomas, a personnel officer in human resources, testified that she was responsible for approving plaintiff's FMLA leave requests. In 2001, plaintiff submitted several requests for FMLA leave. According to Thomas, the requests supported by appropriate medical documentation were granted; the others were denied. On April 16, 2001, Thomas wrote plaintiff, advising him that the FMLA did not relieve him of his obligation to follow established call-in procedures. In a letter dated October 1, 2001, Thomas approved FMLA leave from September 13, 2001 through October 20, 2001, contingent upon plaintiff obtaining clarification from his physician. Thomas reminded plaintiff that the approval of FMLA leave did not circumvent his responsibility to follow agency requirements or union contractual obligations regarding absence reporting.
 {¶ 17} Plaintiff testified that he was disciplined in 2001 for noncompliance with the call-in procedure and, on July 25, 2001, received a letter of termination for the same infraction. In mid-August 2001, he and defendant entered into a LCA which provided that his July 25, 2001 termination would be converted to a 15-day suspension upon compliance with the terms of the agreement. Plaintiff was directed to return to work on a date certain in August 2001. However, rather than returning to work on the scheduled date, he sent defendant a fax stating that he would not return to work until defendant signed a waiver of union representation and provided it to his attorney. Upon receipt of the fax, June Gutterman, agency director, wrote to plaintiff and advised him that it was his responsibility to process the waiver and that, if he did not return to work, he would be recommended for termination. Plaintiff did not return to work. As a result, defendant informed him by letter that due to his failure to return to work and his continued noncompliance with the call-in procedure, he would be recommended for termination. Plaintiff resigned effective October 19, 2001.
 {¶ 18} Plaintiff testified that he was treated differently than other VRC's in that they were permitted to function independently without supervision and were allowed more freedom in their work routines. Plaintiff alleged that defendant discriminated against him in several ways: by implementing disciplinary action against him while he was on approved FMLA leave in February 2001; by requiring him to adhere to a strict call-in policy for reporting absences; by attempting to transfer him to the central office; and by requiring him to carry files to the central office.
 {¶ 19} Based upon these factual findings, the magistrate determined that plaintiff failed to prove his claims for disability discrimination, sex discrimination, FMLA violations, breach of the LCA and constructive discharge by a preponderance of the evidence and recommended that those claims be denied. The magistrate further determined that, to the extent plaintiff's complaint raised unfair labor practices claims and/or collective bargaining agreement violations, the court was without jurisdiction to entertain such claims and recommended that those claims be dismissed. Finally, the magistrate determined that the individuals named in plaintiff's complaint were entitled to civil immunity, pursuant to R.C. 9.86 and 2743.02(F), and that the courts of common pleas do not have jurisdiction over civil actions against them based upon the allegations in the case. Accordingly, the magistrate recommended that judgment be entered in favor of defendant. In addition, the magistrate denied defendant's October 17, 2003 motion in limine.
 {¶ 20} On July 27, 2004, plaintiff filed objections to the magistrate's decision, arguing that the magistrate erred in dismissing his claims of unfair labor practices on jurisdictional grounds and in rendering judgment against him on his remaining claims, as the evidence pertaining to those claims did not support the magistrate's decision. In response, defendant asserted that plaintiff's objections were not timely filed and that he failed to support his objections with a copy of the transcript or an affidavit of the evidence presented to the magistrate as required by Civ.R. 53(E)(3)(c). In addition to noting these procedural errors, defendant addressed plaintiff's objections. Plaintiff also filed a separate motion to strike plaintiff's objections as untimely.
 {¶ 21} By entry dated September 13, 2004, the court denied defendant's motion to strike. The trial court overruled the objections that challenged factual findings made by the magistrate in support of her conclusions on grounds that plaintiff failed to provide the court with evidentiary support for those objections in contravention of Civ.R. 53(E)(3)(c).
The court also overruled the objection to the magistrate's conclusion that the court lacked jurisdiction over the unfair labor practices claims. Accordingly, the court adopted the magistrate's decision as its own and rendered judgment in favor of appellee.
 {¶ 22} Plaintiff has timely appealed the trial court's judgment and sets forth the following 12 assignments of error:
1. The trial court erred in affirming the Magistrate's decision because SERB does not have exclusive jurisdiction in this case as the same facts that allege an unfair labor practice, also support discrimination due to disability in violation of Ohio Revised Code 4112.02, and therefore, the exclusivity of SERB's jurisdiction is not established.
2. The trial court erred in affirming the Magistrate's decision in determining relative facts and applying the law as Plaintiff-Appellant was treated differently than non-disabled similarly situated employees at the Rehabilitation Services Commission due to his disability in violation of 4112.02 in the following aspects; i.e. call-in procedure, trips downtown, having to physically report downtown, having to physically carry files downtown, having to seek approval and review for ministerial functions, and having his discretionary power removed.
3. The trial court erred in adopting the conclusions of fact and law in the Magistrate's decision and rendering judgment in favor of the Defendant-Appellee as a violation of the Family Medical Leave Act,29 U.S.C. 2601 has been established by the Plaintiff-Appellant. The Plaintiff-Appellant had a serious condition and had Family approved Medical Leave since 1996 and was disabled, which Defendant-Appellee Rehabilitation Services Commission knew. It was merely harassment to keep additional requirements in the form of additional medical proof as to the duration of the Plaintiff-Appellant's disability or serious condition as his condition and duration was known to be permanent by the Defendant-Appellee. The Plaintiff-Appellant always gave reasonable notice of medical emergencies throughout the time that he was employed.
4. The trial court erred in not finding that the Defendant-Appellee breached the Last Chance Agreement, because the Last Chance Agreement was void or voidable[.] Defendant-Appellee were [sic] made aware that the union, 1199 Service Employees International Union, SEIU, did not represent the Plaintiff-Appellant, and that the Plaintiff-Appellant had his private attorney represent him from on or about 1999 to the day that he was terminated in any and all matters dealing with his employment, including but not limited to grievances.
5. The trial court erred in finding that the Last Chance Agreement was not breached by Defendants-Appellees due to the fact that Robert Ott, who had co-authored the Last Chance Agreement along with Jeff Mackey, had a union representative sign the Last Chance Agreement knowing that he was not the representative as Plaintiff-Appellant's private attorney was his union representative which the trial court did not consider in arriving at its decision.
6. The trial court erred in not finding the Plaintiff-Appellant was constructively discharged. Plaintiff-Appellant was demoted, severely scrutinized, punished excessively, discriminated against in the conditions and privileges of employment and denied the indicia of employment he loved.
7. The trial court erred in adopting the Magistrate's finding of fact and law in finding that David Ott, Jeff Mackey, Radene Matheny, Kay Kelso and John Downs were immune from liability pursuant to 2743.02(f) and Ohio Revised Code 9.86.
8. The trial court erred in overruling Plaintiff-Appellant's objection to the Magistrate's decision in finding judgment for the Defendant-Appellee.
9. The trial court erred in finding that Defendant-Appellee did not discriminate against the Plaintiff-Appellant due to his disability in violation of 4112.02 which is to be patterned after the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 as they did not treat any request for reasonable accommodation and denied same and they did not engage in an interactive process concerning said reasonable accommodation as required by law.
10. The trial court erred in finding that Defendant-Appellee did not interfere with Plaintiff-Appellant's Family Medical Leave Act rights pursuant to 29 U.S.C. 2601 and 29 U.S.C. 2615.
11. The trial court erred in finding that the Plaintiff-Appellant was not constructively discharged from his employment.
12. The trial court erred in adopting the magistrate[']s decision as to the Plaintiff-Appellant breaching the Last Chance Agreement.
(Transcript references omitted.)
 {¶ 23} Plaintiff's first assignment of error suggests that the magistrate viewed his ADA, R.C. 4112.02, and FMLA claims as falling under the general heading of "unfair labor practices" subject to the exclusive jurisdiction of SERB. To the contrary, the court carefully distinguished plaintiff's ADA, R.C. 4112.02, and FMLA claims from his so-called "unfair labor practices" claims and addressed them separately and thoroughly. In addition, to the extent plaintiff's complaint asserted claims for "unfair labor practices," the court properly ruled that it lacked subject-matter jurisdiction over such claims in accordance with prevailing case law. SeeState ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v.Court of Common Pleas of Franklin County (1996), 76 Ohio St.3d 287. Accordingly, the first assignment of error is not well-taken.
 {¶ 24} Plaintiff's remaining assignments of error are interrelated and will be addressed together. Plaintiff's second and ninth assignments of error assert the magistrate erred in failing to find that defendant discriminated against him due to his disability in violation of the ADA and R.C. 4112.02. Plaintiff's third and tenth assignments of error contend the magistrate erred in failing to find that defendant violated the FMLA.
Plaintiff's fourth, fifth, and twelfth assignments of error submit the magistrate erred in failing to find that defendant breached the LCA. Plaintiff's sixth and eleventh assignments of error argue the magistrate erred in failing to find that he was constructively discharged. Plaintiff's seventh assignment of error contends the magistrate erred in finding that the individuals named in plaintiff's complaint were entitled to immunity pursuant to R.C. 9.86 and 2743.02(F). Plaintiff's eighth assignment of error contends the magistrate erred in recommending judgment for defendant.
 {¶ 25} Any objection to the magistrate's findings of fact must be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact, or by an affidavit of that evidence if a transcript is not available. Civ.R. 53(E)(3)(c). It is undisputed that plaintiff failed to submit the transcript of the proceedings before the magistrate with the trial court. Plaintiff filed the transcript with the record on appeal; however, we are precluded from considering the transcript when the trial court did not have the opportunity to review it before determining whether to adopt the magistrate's decision. In reK.X., Franklin App. No. 04AP-949, 2005-Ohio-3791, at ¶ 13, citing Stateex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728.
 {¶ 26} Here, resolution of plaintiff's objections required an examination by the trial court of the evidence presented to the magistrate. In the absence of a transcript, the trial court could not have determined whether the evidence presented to the magistrate supported the magistrate's factual findings. Moore v. Ohio Dept. ofRehab. and Corr., Franklin App. No. 05AP-53, 2005-Ohio-3939, at ¶ 11. Because the required support for plaintiff's objections was not provided, the trial court was required to accept the magistrate's findings of fact and could examine only the legal conclusions based upon those facts. Dale v. Ohio State Highway Patrol, Franklin App. No. 04AP-639, 2005-Ohio-3383, at ¶ 18, citing Duncan, supra, at 730.
 {¶ 27} "The Ohio Supreme Court has held that, `[w]hen a party objecting to a [magistrate's decision] has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the [decision], appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the [magistrate's decision.]'" Moore, quoting Duncan, supra.
Thus, our review of plaintiff's assignments of error is limited to whether the trial court abused its discretion in applying the law to the magistrate's findings of fact. Id., citing H.L.S. Bonding Co. v. Fox,
Franklin App. No. 03AP-150, 2004-Ohio-547. An abuse of discretion implies an arbitrary, unreasonable or unconscionable attitude on the part of the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. We may not substitute our judgment for that of the trial court when applying the abuse of discretion standard. Dale, supra, citing Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169.
 {¶ 28} Upon review, we find that the magistrate's findings of fact support the magistrate's conclusions that plaintiff failed to prove, by a preponderance of the evidence, that defendant discriminated against him on the basis of sex or disability, that defendant breached the LCA, that defendant constructively discharged him, or that defendant violated the FMLA. We further find that the magistrate's findings of fact support the magistrate's conclusion that the individuals named in plaintiff's complaint were immune from liability pursuant to R.C. 9.86 and 2743.02(F). Each of plaintiff's second through twelfth assignments of error is based upon findings of fact, which, as already noted, may not be challenged on appeal as no transcript was provided to the trial court. Accordingly, plaintiff's second through twelfth assignments of error are not well-taken.
 {¶ 29} For the foregoing reasons, plaintiff's twelve assignments of error are overruled and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
Petree and McGrath, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.