[Cite as *Black v. Columbus Sports Network, L.L.C.*, 2014-Ohio-3607.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Monte R. Black et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 13AP-1025 |
| v. | : | (C.P.C. No. 08CVH-09-13163) |
| Columbus Sports Network, LLC et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

## D E C I S I O N

### Rendered on August 21, 2014

*Cohen Rosenthal & Kramer LLC, Joshua R. Cohen*, and *Ellen M. Kramer*, for appellants.

*Shumaker, Loop & Kendrick, LLP, Peter R. Silverman, Michael A. Snyder*, and *Adam M. Galat*, for appellees Peter Klisares and the Estate of Stephen Marriott.

*Jones and Solomon*, and *Joseph J. Solomon*, for appellee Stephen Welly.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Plaintiffs-appellants, Monte R. Black ("Black") and James T. Arnold ("Arnold") (collectively "appellants"), appeal from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Peter Klisares ("Klisares"), Stephen Welly ("Welly"), and the Estate of Stephen Marriott (at pertinent times "Marriott") (collectively "appellees"). For the following reasons, we affirm.

## I. BACKGROUND

{¶ 2}  On September 25, 2009, appellants filed an amended complaint against appellees[1] in connection with their failed investment in Columbus Sports Network, LLC ("CSN"), an all-sports Columbus cable television station.[2]  Appellants sought to rescind their purchase of CSN membership units, pursuant to R.C. 1707.43, based upon alleged fraud in the sale of those securities in violation of R.C. 1707.44(G).  In particular, appellants alleged that appellees concealed or failed to disclose CSN's assumption of a $2.3 million cognovit note.  Appellants further contended that R.C. 1707.43 imposed joint and several liability for rescission.[3]

{¶ 3}  Appellants filed a motion for partial summary judgment on their claim. Following responsive briefing, the trial court denied the motion on July 1, 2011.

{¶ 4}  The court thereafter referred the case to a magistrate, who conducted a three-day bench trial in October 2011.  On November 2, 2011, the magistrate issued a decision and recommendation which included findings of fact and conclusions of law. Therein, the magistrate determined that appellants failed to prove that appellees knowingly engaged in an act or practice that violated R.C. Chapter 1707 and recommended that the trial court enter judgment in favor of appellees.

{¶ 5}  On November 22, 2011, appellants filed objections to the magistrate's decision, which included numerous references both to the trial transcript and attendant exhibits.  Although appellants attached excerpts of the trial transcript in support of their objections, they did not file the complete transcript with the court.  In response to the objections, appellees Klisares and Marriott maintained that appellants' objections did not meet the specificity and particularity requirements set forth in Civ.R. 53(D)(3)(b)(ii).

{¶ 6}  Appellants thereafter filed a reply brief, arguing that their objections identified "four essential defects" in the magistrate's decision which entitled them to judgment in their favor.  Appellants identified those "defects" as follows: (1) "The Magistrate erred in finding that CSN offering materials disclosed that the company would

---

[1] The amended complaint named Stephen Marriott as a defendant.  Following Marriott's death, the trial court substituted the Estate of Stephen Marriott.

[2] The amended complaint named several additional defendants.  For reasons not germane to the present appeal, these defendants are no longer involved in the case.

[3] The amended complaint also asserted a claim for civil liability under R.C. 1707.41. However, appellants ultimately chose to proceed exclusively on their claim for rescission under R.C. 1707.43.

take on debt like the obligation to repay the $2.3 million Sky Bank loan," (2) "The magistrate ignored the fact that CSN's assumption of this debt replaced a far less onerous means described in the offering materials for reimbursing start-up costs to CSN's founder, United Media Acquisitions, LLP," (3) "The Magistrate misstated evidence showing that around $600,000 of the $2.3 million debt pertained to amounts UMA expended not on CSN but on its television station in Omaha," and (4) "The Magistrate erred in failing to determine that the Defendants each 'participated in or aided the seller' in the sale of CSN membership units to [appellants], thereby establishing their liability under R.C. 1707.43." (Dec. 29, 2011 Reply Brief, 1.)

{¶ 7}    On November 1, 2013, the trial court issued a decision overruling appellants' objections and approving and adopting the magistrate's decision.  Therein, the court recognized that appellants' objections failed to identify alleged factual and legal errors with the specificity and particularity required by Civ.R. 53(D)(3)(b)(ii).  Nonetheless, the trial court considered as objections the four alleged "defects" set forth in appellants' reply brief.

{¶ 8}    Regarding appellants' first three objections, the trial court noted that appellants had failed to file a complete trial transcript in violation of Civ.R. 53(D)(3)(b)(iii) and Franklin County Common Pleas Court Loc.R. 99.05.  The court found that these objections challenged the magistrate's factual findings, which could not be independently reviewed absent a complete transcript.  On this basis, the trial court overruled appellants' first three objections.

{¶ 9}    The trial court found that appellants' fourth objection could be construed as either a factual or legal challenge to the magistrate's decision.  Despite the hybrid nature of the objection, the court chose to consider it as a "potential failing in a conclusion of law."  (Nov. 1, 2013 Decision, 5.)  The court ultimately concluded that "no fraudulent act or acts exist upon which to base liability."  (Nov. 1, 2013 Decision, 6.)  The court further concluded that, because there was no liability, the magistrate's alleged failure to consider whether appellees participated or aided in the sale was "without import and therefore harmless."  (Nov. 1, 2013 Decision, 6.)  Accordingly, the trial court overruled appellants' fourth objection.

{¶ 10} On November 14, 2013, appellants filed a motion for reconsideration, in which they acknowledged their failure to file a complete trial transcript. Appellants nonetheless contended that they had provided the trial court with sufficient evidence to rule on the objections to the magistrate's factual findings. On the same day, appellants filed the complete trial transcript and attendant exhibits. By decision and entry filed November 27, 2013, the trial court denied the motion for reconsideration without analysis. Thereafter, by entry issued December 3, 2013, the trial court entered final judgment for appellees.

## II. ASSIGNMENTS OF ERROR

{¶ 11} In a timely appeal, appellants set forth five assignments of error for our review:

> 1. The trial court abused its discretion in failing to enter judgment in favor of the Appellants based on the evidence submitted in connection with their Objections to the Magistrate's Decision and Recommendation.
>
> 2. The trial court abused its discretion in holding that the Appellants' failure to file a complete trial transcript justified its refusal to consider the merits of their Objections to the Magistrate's Decision and Recommendation.
>
> 3. The trial court abused its discretion in overruling the Appellants' Objection to the Magistrate's Decision and Recommendation regarding the assumption of an unaffiliated company's debt by Columbus Sports Network, LLC.
>
> 4. The trial court abused its discretion in overruling the Appellants' Objection to the Magistrate's Decision and Recommendation regarding the replacement of "preference" payments with a cognovit term note as the means for repaying start-up costs related to Columbus Sports Network LLC.
>
> 5. The trial court abused its discretion in overruling the Appellants' Motion for Reconsideration, which pertained to its denial of their Objections to the Magistrate's Decision and Recommendation.

## III.  DISCUSSION

### A.  Motion to Strike or Disregard Arguments in Reply Brief

{¶ 12} Before addressing appellants' assignments of error, we first consider the motion to "strike or disregard new arguments in appellants' reply brief" filed by appellees Klisares and the Estate of Stephen Marriott.  As resolution of this case turns on appellants' failure to file a complete trial transcript in support of their objections to the magistrate's decision, the arguments in appellants' reply brief regarding the necessary elements of their securities fraud claim are not dispositive and, thus, need not be formally stricken or disregarded.  Accordingly, appellees' motion is denied.

### B.  First, Second, and Fifth Assignments of Error

{¶ 13} Because appellants' first, second, and fifth assignments of error raise an issue regarding the procedural posture of this case, we address them together.  In these assignments of error, appellants essentially challenge the scope of the trial court's review under Civ.R. 53.

{¶ 14} In accordance with Civ.R. 53, the trial court reviews a magistrate's decision de novo.  *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 15.  In reviewing objections to a magistrate's decision, the trial court must make an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).  An appellate court, by contrast, applies an abuse-of-discretion standard when reviewing a trial court's adoption of a magistrate's decision.  *Id.* at ¶ 15.  An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  Claims of error by the trial court must be based on the trial court's actions, rather than on the magistrate's findings.  *Mayle* at ¶ 15.  Therefore, we may reverse the trial court's adoption of the magistrate's decision only if the trial court acted unreasonably, arbitrarily or unconscionably.  *Id.*

{¶ 15} Civ.R. 53(D)(3)(b)(iii) provides, in pertinent part, that objections to the magistrate's factual findings "shall be supported by a transcript of all the evidence submitted to the magistrate relevant to [those findings]" and that "[t]he objecting party shall file the transcript * * * with the court within thirty days after filing objections unless

the court extends the time in writing for preparation of the transcript."  The absence of a transcript restricts the scope of review at both the trial court and appellate levels.  A transcript is not required, however, to support objections to conclusions of law.  *Dale v. Ohio State Hwy. Patrol*, 10th Dist. No. 04AP-639, 2005-Ohio-3383, ¶ 18 (where support for objections is not provided, a trial court is required to accept the magistrate's findings of fact and may examine only the magistrate's legal conclusions based upon those facts).  As this court has stated, "where a party files objections to a magistrate's decision in the trial court, but does not support those objections with a transcript * * *, that party is precluded from arguing on appeal that the trial court erred in its factual determinations."  *Gill v. Grafton Corr. Inst.*, 10th Dist. No. 09AP-1019, 2010-Ohio-2977, ¶ 14, citing *Baddour v. Rehab. Servs. Comm.*, 10th Dist. No. 04AP-1090, 2005-Ohio-5698, ¶ 28; *Schofield v. Benton*, 10th Dist. No. 92AP-161 (Aug 20, 1992).  "In such circumstances, an appellate court's review of an appellant's assignments of error is limited to whether the trial court abused its discretion in applying the law to the magistrate's findings of fact."  *Dale* at ¶ 18.

{¶ 16} While conceding that they did not timely file a complete trial transcript in support of their objections to the magistrate's factual findings, appellants nonetheless contend on appeal, as they did in their motion for reconsideration, that they provided the trial court with sufficient evidence to rule on their objections to the magistrate's factual findings.  " 'Where the failure to provide the relevant portions of the transcript or suitable alternative is *clear* on the face of the submissions, the trial court cannot then address the merits of that factual objection because the objecting party, whether through inadvertence or bad faith, has not provided all of the materials needed for the review of that objection.' "  (Emphasis sic.)  *Id.* at ¶ 17, quoting *Wade v. Wade*, 113 Ohio App.3d 414, 418 (11th Dist.1996).  " 'It [is the objecting party's] duty to provide *all* of the relevant materials needed for [a] trial court to properly address [the] objections.  It is disingenuous for [an objecting] party to submit only those portions of the evidence presented that supports his [or her] position, while omitting all evidence that was contrary to his [or her] position.' "  (Emphasis sic.)  *Id.* at ¶ 17, quoting *Wade* at 418.  "If the objecting party fails to provide the court with a transcript of the magistrate's hearing to support the objections, the trial court may properly adopt a magistrate's factual findings without any further

consideration." *Estate of Stepien v. Robinson*, 11th Dist. No. 2013-L-001, 2013-Ohio-4306, ¶ 28, citing *Lincoln S. & L. Assn. v. Damron*, 4th Dist. No. 02CA4, 2003-Ohio-2596, ¶ 23.

{¶ 17} As the objecting parties, appellants were required to provide all the evidence relevant to their objections to the magistrate's factual findings. Contrary to appellants' averments at oral argument, the trial court did not summarily overrule the objections due to appellants' failure to file the transcript. Rather, the trial court assessed the sufficiency of the evidence appellants provided via the excerpted trial testimony. Indeed, the trial court expressly observed that "[w]hile [appellants] did attach those parts of the transcript that they believe support their arguments, the Court finds that it cannot second guess the veracity or accuracy of the magistrate's findings of fact outside the context of a complete transcript of the trial testimony." (Nov. 1, 2013 Decision, 5.) *See Welty v. Casper*, 10th Dist. No. 13AP-618, 2014-Ohio-2903, ¶ 29.

{¶ 18} We also find disingenuous appellants' suggestion that appellees' failure to contest the absence of the transcript absolved appellants from their duty to file it. The plain language of Civ.R. 53(D)(3)(b)(iii) places the burden of supporting objections to a magistrate's factual findings on the objecting party. To accept appellants' argument would require this court to rewrite Civ.R. 53 to place a duty on non-objecting parties to object to the absence of the transcript. We decline appellants' invitation to do so.

{¶ 19} Because appellants failed to submit all the evidence relevant to the magistrate's factual findings at issue, the trial court did not abuse its discretion in overruling appellants' objections to the factual findings. *Dale* at ¶ 19. Further, the trial court did not abuse its discretion in denying appellants' motion for reconsideration, as it merely reiterated their arguments regarding their failure to file the complete trial transcript. "A trial court has plenary power in ruling on a motion for reconsideration, and we will not reverse such rulings absent an abuse of discretion." *Mindlin v. Zell*, 10th Dist. No. 11AP-983, 2012-Ohio-3543, ¶ 23.

{¶ 20} For the foregoing reasons, appellants' first, second, and fifth assignments of error are overruled.

### C.  Third and Fourth Assignments of Error

{¶ 21} In their third and fourth assignments of error, appellants contend the trial court abused its discretion in overruling their objections to the magistrate's decision pertaining to CSN's assumption of an unaffiliated company's debt and the replacement of "preference" payments with a cognovit note as the means for repaying start-up costs related to CSN.

{¶ 22} As discussed above, appellants' failure to file a complete transcript of the proceedings before the magistrate limited the trial court's review to the application of the law to the findings of fact as determined by the magistrate.  *Dale* at ¶ 18.  On appeal, our review is limited to whether the trial court abused its discretion in doing so.  *Id.*

{¶ 23} The findings of fact, as determined by the magistrate, are as follows.  At all relevant times, Black was a successful businessman who owned his own business.  He was a long-time friend of Klisares and a client of Arnold, who owned an investment company.

{¶ 24} Klisares, Welly, and Robert Robinson[4] were members of CSN's management committee; Robinson was its managing member.  Welly, Marriott, and Robinson were investors in United Media Acquisitions ("UMA").  UMA owned the broadcast license for CSN, and its members "initiated the concept and provided the foundation for [CSN]."  (Nov. 2, 2011 Magistrate's Decision, 3.)  UMA also owned cable television stations in Salt Lake City, Utah and Omaha, Nebraska.

{¶ 25} Prior to March 2007, Klisares approached Black to discuss an investment opportunity in CSN.  The investment opportunity was a "Regulation D" private offering made only to investors "whose worth exceeded one million [dollars] or had income in excess of two hundred thousand [dollars] per year."  (Nov. 2, 2011 Magistrate's Decision, 2.)  Each unit of ownership was $117,647.  Black initially purchased five membership units; Arnold purchased one membership unit.

{¶ 26} As of March 14, 2007, the offering documents identified UMA as the largest owner of CSN membership units.  These documents also listed $2.6 million as "Debt associated with CSN."  On April 6, 2007, CSN's management committee authorized Robinson to execute a cognovit note and negative pledge agreement, obligating CSN to

---

[4] Robinson, one of the defendants named in the amended complaint, is no longer involved in this case due to his bankruptcy.

assume a $2.3 million loan which had originally been taken by UMA from Sky Bank. The action approving the commitment stated that the loan proceeds would "be made available to UMA and then to [CSN]." (Nov. 2, 2011 Magistrate's Decision, 3.)

{¶ 27} Klisares testified that he believed at the time the note was executed that CSN would receive the loan proceeds. However, he acknowledged that nothing in the agreement "required a specific portion [of the loan] to come back to CSN" and that "he recognized that some part of the loan [proceeds] would go to UMA for previous expenses." (Nov. 2, 2011 Magistrate's Decision, 3-4.)

{¶ 28} Klisares and Welly testified that they believed that the listing of $2.6 million of "Debt associated with CSN" in the offering documents clearly notified prospective investors that CSN would incur such debt. Both testified that they did not know at the time of the offering that $600,000 of the loan proceeds were to be used for obligations incurred by UMA's affiliate station in Omaha; rather, they learned of this circumstance at some later date. Klisares testified that his disagreement over CSN's receipt of the loan proceeds ultimately "led to his resignation from [CSN's] management committee." (Nov. 2, 2011 Magistrate's Decision, 4.)

{¶ 29} James Ryan ("Ryan"),[5] the attorney who drafted the offering documents for CSN, testified that he believed the offering documents were accurate and that the loan assumption was not material so as to require separate disclosure.

{¶ 30} Arnold testified that he believed that the investor summary "did not factor in the loan and that it should have." (Nov. 2, 2011 Magistrate's Decision, 4.) He admitted that he posed no questions as to loans or debt but made only general inquiries regarding operations. He further admitted that, although he knew that Robinson was CSN's managing member, he asked no questions of him.

{¶ 31} Black testified that he undertook no "personal investigation" into the investment opportunity. Rather, he pursued it "based on Klisares' involvement and upon the scrutiny of Arnold." (Nov. 2, 2011 Magistrate's Decision, 5.) Although Black testified that he was "alarmed" when he later learned of the loan assumption, he invested more money in CSN after this discovery. (Nov. 2, 2011 Magistrate's Decision, 5.)

---

[5] The magistrate incorrectly identified James Ryan as James Arnold in paragraph 28 of the findings of fact.

{¶ 32} In the conclusions of law, the magistrate first observed that appellants' cause of action was based upon a violation of R.C. 1707.44(G) and a right of rescission under R.C. 1707.43. The magistrate noted that R.C. 1707.44(G) precludes any person from knowingly engaging in any fraudulent act or practice with respect to the sale of securities. The magistrate further noted that R.C. 1707.43 affords the purchaser the right of rescission for an unlawful sale and that persons who made an unlawful sale or who participated in or aided the seller in making an unlawful sale are jointly and severally liable to the purchaser.

{¶ 33} The magistrate recognized that cases addressing claims of fraud under R.C. Chapter 1707 discuss and apply the elements of common law fraud, which are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. The magistrate concluded that appellants had failed to satisfy the elements of its statutory fraud claim.

{¶ 34} In particular, the magistrate noted that appellants based their fraud claim upon appellees' alleged nondisclosure of CSN's loan assumption. The magistrate averred that a duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. The magistrate concluded that the evidence presented did not establish a fiduciary relationship between appellants and any of the appellees. The magistrate particularly averred that, while Black and Klisares were long-time friends, no evidence established that either Black or Arnold reposed any special trust or confidence in Klisares.

{¶ 35} The magistrate further concluded that entering into the loan assumption was not a material change from the offering particulars and investment summary which would require communication of that obligation to appellants. In so concluding, the magistrate observed that the offering documents set forth a $2.6 million debt obligation for CSN and that appellants presented no evidence establishing that CSN assumed or affiliated itself with other significant debt. In addition, the magistrate noted that Arnold,

on behalf of himself and Black, had the opportunity to examine and question the offering documentation but failed to do so.

{¶ 36} Regarding appellants' complaint that the loan was a new obligation that encompassed a substantial portion of the $11.7 million total investment required by CSN, the magistrate averred that no evidence established that CSN's indebtedness was increased by the loan; rather, the evidence established that the $2.6 million was reduced to $2.3 million. The magistrate also rejected appellants' argument pertaining to the $600,000 of indebtedness for UMA expenditures that were not on behalf of CSN. The magistrate concluded that UMA's use of the $600,000 was an action that occurred after the offering, investor summary or loan commitment occurred and that the remedy for any malfeasance was not by way of rescission under R.C. Chapter 1707.

{¶ 37} The magistrate also discussed the parties' arguments regarding proof of knowledge under R.C. Chapter 1707. The magistrate concluded that, while it was obvious that appellees acted knowingly in authorizing the loan assumption, "[w]hat is not obvious [is] that they did so by ignoring a right to inform [appellants] of the assumption." (Nov. 2, 2011 Magistrate's Decision, 14.) The magistrate based this conclusion on testimony offered by Klisares, Welly, and Ryan establishing that they did not believe that the assumption of the loan was a material change from the offering or investment summary.

{¶ 38} Noting its adherence to the findings of fact, as determined by the magistrate, and following its review of the magistrate's decision, the trial court concluded that appellants had failed to establish a violation of R.C. 1707.44(G). The court stated that "[t]he Magistrate found, and the Court independently agrees, that no fraudulent act or acts exist upon which to base liability." (Nov. 1, 2013 Decision, 6.) Appellants' third and fourth assignments of error essentially present manifest-weight challenges to the trial court's decision. More particularly, appellants contend the evidence presented at the trial before the magistrate established that appellees failed to disclose to appellants, prior to their investment in CSN: (1) that CSN's assumption of the $2.3 million Sky Bank loan replaced the "preference" payments described in the offering materials as the means for repaying start-up costs to UMA, and (2) that $600,000 of the $2.3 million debt pertained to amounts UMA expended not on CSN but on its Omaha television station. Appellants contend that appellees' failure to disclose these matters constituted fraudulent conduct in

the sale of the CSN membership units in violation of R.C. 1707.44(G) and that the trial court erred in failing to so find.

{¶ 39} Challenges to the manifest weight of the evidence present factual challenges to the magistrate's decision. *Estate of Stepien* at ¶ 38. Appellants cite liberally to those portions of the trial transcript and exhibits submitted at trial that support their position. However, as noted above, appellants failed to file the complete transcript with the trial court. "[A]n appellant cannot rely on evidence from the transcript of a magistrate's hearing where that transcript was not before the court when ruling on the objections." *Eiselstein v. Baluck*, 7th Dist. No. 11 MA 74, 2012-Ohio-3002, ¶ 18, citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995), citing *State v. Ishmail*, 54 Ohio St.2d 402 (1978). " 'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.' " *Estate of Stepien* at ¶ 29, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

{¶ 40} By limiting their arguments to factual challenges to the magistrate's decision, appellants have failed to assert the only possible error that remains viable, i.e., that the trial court abused its discretion in applying the law to the magistrate's factual findings. Instead, they simply reference the evidence they presented to the magistrate and argue that it supports a finding of fraud. Because the arguments set forth in appellants' third and fourth assignments of error fall outside this court's limited scope of appellate review due to the absence of a transcript, they are overruled.

## IV. DISPOSITION

{¶ 41} Appellees' motion to strike is denied. We overrule appellants' five assignments of error and affirm the judgment of the Franklin County Court of Common Pleas in favor of appellees.

*Motion to strike denied;*
*judgment affirmed.*

TYACK and O'GRADY, JJ., concur.

_____