[Cite as *1st Natl. Fin. Servs. v. Ashley*, 2019-Ohio-5321.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

1st National Financial Services, :

    Plaintiff-Appellee, :

                              No. 18AP-803
v. : (M.C. No. 2015CVF013668)

Stacia Ashley, : (REGULAR CALENDAR)

    Defendant-Appellant. :

D E C I S I O N

Rendered on December 24, 2019

**On brief**: *Jeffrey A. Catri Co., LLC*, and *Jeffrey A. Catri*, for appellee. **Argued**: *Jeffrey A. Catri*.

**On brief**: *The Legal Aid Society of Columbus, Jacqueline Gutter, Scott E. Torguson*, and *Catherine L. Beck*, for appellant. **Argued**: *Scott E. Torguson*.

APPEAL from the Franklin County Municipal Court

BROWN, J.

{¶ 1} Stacia Ashley, defendant-appellant, appeals from a judgment of the Franklin County Municipal Court, in which the court denied appellant's motion to vacate.

{¶ 2} In 2013, appellant obtained a loan from plaintiff-appellee, 1st National Financial Services ("1st National") for $1,998.31. Appellant failed to pay according to the terms of the loan, and on September 24, 2014, 1st National filed a debt collection action. The parties subsequently entered into a written payment agreement, which included monthly payments and a lump sum payment. Appellant did not pay according to the terms of the agreement. The parties entered negotiations again and, on February 28,

2015, appellant signed a cognovit note drafted by 1st National's counsel, which set forth terms for repayment of the loan and indicated it was for the settlement of a commercial matter rather than a consumer loan, which would be prohibited by R.C. 2323.13(E). On March 2, 2015, 1st National dismissed its 2014 debt collection action.

{¶ 3} However, appellant failed to pay according to the terms of the cognovit note. Therefore, on April 27, 2015, 1st National commenced the present action to enforce the cognovit note. On April 30, 2015, the trial court entered a judgment in favor of 1st National in the amount of $1,073.70. On July 15, 2015, the court entered a garnishment order which ordered appellant's wages garnished to satisfy the judgment.

{¶ 4} On September 8, 2015, appellant filed a motion to vacate the trial court's April 30, 2015 judgment, asserting the trial court lacked subject-matter jurisdiction over the cognovit note because it arose from a consumer loan, and a cognovit note can only arise out of a commercial loan. On November 23, 2015, 1st National filed a "Satisfaction of Judgment" because it had received all or substantially all of the funds requested in the garnishment order. On the same date, 1st National responded to appellant's motion to vacate, claiming the motion was moot due to the "Satisfaction of Judgment."

{¶ 5} On December 11, 2015, the trial court issued an entry stating that all pending motions were moot without further explanation.

{¶ 6} Appellant appealed, and in *1st Natl. Fin. Servs. v. Ashley*, 10th Dist. No. 16AP-18, 2016-Ohio-5497 ("*Ashley I*"), this court reversed the trial court's judgment, finding the trial court erred when it dismissed appellant's motions as moot without examining whether it had subject-matter jurisdiction to enter judgment. We remanded the matter for a hearing on whether the cognovit note arose out of a consumer loan and whether the trial court had subject-matter jurisdiction.

{¶ 7} On May 11, 2017, the trial court held an evidentiary hearing. On August 15, 2017, the trial court issued judgment in favor of 1st National, finding that appellant failed to sustain her burden to prove that the cognovit note arose out of a commercial loan.

{¶ 8} Appellant appealed and, in *1st Natl. Fin. Servs. v. Ashley*, 10th Dist. No. 17AP-638, 2018-Ohio-3134 (*"Ashley II"*), this court reversed the trial court's judgment, finding the trial court erred when it placed the burden of proof on appellant and should

have placed the burden of proof on 1st National to prove the cognovit note arose from a commercial transaction. We remanded the matter to the trial court.

{¶ 9}  On September 11, 2018, the trial court issued another judgment, in which it denied appellant's motion to vacate, finding that 1st National sustained its burden to prove that the court had subject-matter jurisdiction. Appellant appeals the judgment of the trial court, asserting the following assignment of error:

> The Trial Court Abused Its Discretion When it Denied Ms.
> Ashley's Motion to Vacate.

{¶ 10} Appellant argues in her sole assignment of error the trial court abused its discretion when it denied her motion to vacate. In *Ashley II*, we already discussed the applicable standard of review, general law regarding cognovit notes, and much of the relevant evidence presented. Rather than reinvent these elements, we will reiterate them nearly verbatim herein. Generally, we review a trial court's decision on a motion to vacate for abuse of discretion. *Young v. Locke*, 10th Dist. No. 13AP-608, 2014-Ohio-2500, ¶ 20. However, in the present case, appellant's motion to vacate implicated the trial court's subject-matter jurisdiction. We review questions of subject-matter jurisdiction de novo. *Klosterman v. Turnkey-Ohio, LLC*, 182 Ohio App.3d 515, 2009-Ohio-2508, ¶ 19 (10th Dist.).

{¶ 11} "The cognovit is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the holder." *D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 176 (1972). "[T]he cognovit has long been recognized [in Ohio] by both statute and court decision." *Id.* at 178. Strict compliance with statutory requirements is required to obtain judgment on a cognovit note. "A cognovit judgment is valid if the warrant of attorney to confess judgment and all note terms are strictly construed against the person obtaining the judgment, and court proceedings, based upon such warrant, must conform to every essential detail with the statutory law governing the subject." *Fifth Third Bank v. Pezzo Constr., Inc.*, 10th Dist. No. 11AP-251, 2011-Ohio-5064, ¶ 11, citing *Lathrem v. Foreman*, 168 Ohio St. 186 (1958).

{¶ 12} Notwithstanding the long legal recognition of cognovit notes in Ohio, the General Assembly has curtailed the use of cognovit notes in consumer transactions. R.C.

2323.13(E) provides that "[a] warrant of attorney to confess judgment contained in any instrument executed on or after January 1, 1974, arising out of a consumer loan or consumer transaction, is invalid and the court shall have no jurisdiction to render a judgment based upon such a warrant." The statute defines a consumer loan as "a loan to a natural person and the debt incurred is primarily for a personal, family, educational, or household purpose." R.C. 2323.13(E)(1). If a cognovit note arises out of a consumer loan or a consumer transaction, then a judgment entered based on that cognovit note is void and must be vacated for lack of subject-matter jurisdiction. *Shore W. Constr. Co. v. Sroka*, 61 Ohio St.3d 45, 48 (1991).

{¶ 13} "By its very terms, a cognovit note allows for judgment to be taken against the debtor-party without notice or hearing." *Dollar Bank v. Bernstein Group, Inc.*, 71 Ohio App.3d 530, 533 (10th Dist.1991). Thus, the issue of subject-matter jurisdiction or any other defenses available to a defendant may not be fully and fairly litigated by a trial court prior to entering judgment on a cognovit note. *Id.* In recognition of the unique circumstances presented by cognovit judgments, Ohio courts have held that when a party files a motion to vacate a cognovit judgment pursuant to Civ.R. 60(B), a modified test is appropriate. "Where the relief from judgment sought is on a cognovit note, '[t]he prevailing view is that relief from a judgment taken upon a cognovit note, without prior notice, is warranted by authority of Civ.R. 60(B)(5) when the movant: (1) establishes a meritorious defense, (2) in a timely application.' " *Fifth Third Bank* at ¶ 8, quoting *Meyers v. McGuire*, 80 Ohio App.3d 644, 646 (9th Dist.1992). Further, "[u]nder Civ.R. 60(B), a movant's burden is only to allege a meritorious defense, not to prove that he will prevail on that defense." *Rose Chevrolet v. Adams*, 36 Ohio St.3d 17, 20 (1988).

{¶ 14} In the present case, appellant filed a common law motion to vacate judgment rather than a motion for relief from judgment pursuant to Civ.R. 60(B). However, as we stated in *Ashley II*, "similar considerations arise because of the nature of a cognovit judgment. [Appellant's] motion challenged the trial court's subject-matter jurisdiction, which is an issue that can be raised at any time and renders a court's judgment void ab initio." *Id.* at ¶ 11, citing *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 17. Appellant argued in her motion to vacate that the underlying loan was a consumer loan and, therefore, pursuant to R.C. 2323.13(E), the warrant to confess

judgment contained in the cognovit note was invalid and the court lacked subject-matter jurisdiction to enter judgment on it. Appellant averred that she obtained the original loan to help pay personal bills and all funds she obtained from that loan were used for family and household purposes. Appellant further averred she did not own a business and had never owned a business, and she did not understand the significance of the cognovit note when she signed it. Similarly, at the hearing appellant testified regarding the nature of the underlying loan:

> Q. Okay. How did you first become involved with 1st National Financial Services?
>
> A. I went in to get a loan.
>
> Q. And when was that?
>
> A. 2013.
>
> Q. Why did you take the loan out?
>
> A. Just bills, personal stuff.
>
> Q. What did you use the money for?
>
> A. Bills and personal stuff.
>
> Q. Do you have an example? I know it was a while ago but …
>
> A. I probably put something on maybe electric bill, probably bought some household supplies, cleaning, just things that you need around the house.

(Tr. at 9.)

{¶ 15} Appellant likewise testified about her lack of understanding of the details of the cognovit note:

> A. I talked to Mr. O'Brien, and I also talked to his secretary. They really didn't -- It was almost time for us to go back to court. And I called in to ask about the lump sum payment, and he basically said there will be no lump sum payment; I have to pay all of it. And, so, he was trying to force me to pay all of it at that time and said what he could do is this letter, a note.
>
> Q. And so you went into his office at some point, right?

A. Right.

Q. Did you know what a cognovit note was?

A. No

Q. Did anyone in Mr. O'Brien's office explain to you what a cognovit note was?

A. No.

Q. Did you speak to Mr. O'Brien at all when you were in his office?

A. Yes, he came out of his office, shook my hand, came to speak to me very quickly, just a hello introducing his self; and he basically let his secretary do the rest.

Q. So you talked to his secretary about the document you signed?

A. Uh-huh.

Q. Did she explain what a cognovit note was to you?

A. No. She actually said there was no need for me to read it.

Q. Have you ever owned a business?

A. No.

Q. Did you ever tell anyone at 1st National you owned your own business?

A. No.

Q. Did you ever tell Mr. O'Brien that you owned your own business?

A. No.

Q. Did you ever tell anyone in Mr. O'Brien's office that you owned your own business?

A. No.

* * *

Q. Read the first sentence in the second paragraph [of the Cognovit Promissory Note] there.

A. "The parties further stipulate and agree that this note represents the settlement of a commercial matter and that the instant note is not given for a consumer loan transaction or debt."

Q. Do you know what that means?

A. I'm assuming -- I really don't.

Q. Okay. Did you know what it meant at the time?

A. No.

Q. And nobody explained it to you?

A. No.

Q. And at all times during your dealings with 1st National and Mr. O'Brien, were you a consumer or were you acting as a business owner?

A. Consumer.

(Tr. at 11-13.)

{¶ 16} 1st National supported its memorandum in opposition to appellant's motion to vacate with an affidavit from attorney Kevin O'Brien, who represented 1st National in both municipal court cases. In the affidavit, O'Brien averred he did not know why appellant took out the underlying loan or what she used the loan proceeds for, but he told appellant she could only sign the cognovit note if the underlying loan proceeds were used for a business purpose. O'Brien further averred that appellant did not indicate to him that the proceeds of the underlying loan had been used for family or household purposes. O'Brien testified at the hearing that he explained the terms of the cognovit note to appellant when she came to his office to sign it and that appellant indicated she did not have any questions. At the hearing, O'Brien testified about his conversation with appellant when she came to his office to sign the cognovit note:

Q. Okay. Well, I'm going to jump ahead here, 6, 7 and 8, Ms. Ashley's affidavit is basically saying this was for personal bills.

She didn't own a business and never owned a business. Do you recall having any conversation with her about this?

A. I did because I asked her. I said, you know -- and I think the way I put it is, I would feel more comfortable doing this, you know, knowing, you know, if you use this money for a business, great. You know, I had never done a cog before. But given the circumstances here, I thought, you know, it would be acceptable to do it and she certainly represented to me that she'd use the funds for business. I didn't ask her what her business was. She did not say to me that it was for -- to pay, you know, personal bills. She didn't tell me what she was using the money or what she used the money for at all.

The Court: She didn't tell you at all? Is that what you said?

[A.] She didn't tell me at all when she took the loan out in September of '13.

(Tr. at 64-65.)

{¶ 17} Upon remand from *Ashley II*, the trial court issued a judgment, in which it found that both parties offered contradictory testimony regarding how the cognovit instrument was executed by appellant and O'Brien, as well as how the underlying loan money was used. The court reviewed the testimony quoted above and found appellant's testimony was vague, noting her use of the words "probably" and "maybe" and her general and non-specific explanation regarding the use of the loan money. Therefore, the court found appellant's testimony lacked credibility. The court contrasted her vague and general testimony with the unequivocal language of the cognovit instrument, which indicated it was not being given for consumer purposes. The court believed O'Brien's testimony was credible that he explained to appellant she could only execute the cognovit instrument if the loan had been used for business purposes. The court concluded the better weight of evidence favored 1st National's position that the cognovit instrument did not arise out of or in connection with a consumer loan, as prohibited by R.C. 2323.13(E).

{¶ 18} After a review of the trial court's decision and appellant's argument, we find 1st National met its burden and demonstrated that subject-matter jurisdiction existed because the cognovit instrument did not arise out of a consumer loan or transaction. Although appellant argues her credibility at the hearing was largely irrelevant, we disagree. Lacking any documentary evidence outside of the cognovit instrument itself, the

issue hinges almost entirely on the credibility of the witnesses. The trial court found appellant's assertions that the loan was for personal or household purposes lacked credibility because they were general and lacked any specificity as to what appellant spent the proceeds on. The trial court found O'Brien's testimony credible that he explained to appellant she could only execute the cognovit instrument if she used the proceeds for commercial purposes, and she represented to him that she used the funds for business. It is well-established that a reviewing court is guided by the presumption that factual findings made by the trier of fact are correct. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984). The trier of fact is best able to view the witnesses and make observations as to their demeanor, gestures, and voice inflection and use these observations to judge the credibility of the testimony. *Id.*

{¶ 19} In the present case, appellant gives the court no persuasive reason to question the trial court's credibility determination. Appellant claims that O'Brien likely has a financial interest in the outcome of the case, so he should not be believed; however, without more, such an argument is speculative, at best. Furthermore, appellant claims O'Brien should not be believed because he did not endeavor to ask appellant what business she was engaged in; however, such does not undermine his clear testimony that she told him the loan was used for business purposes. Given the trial court was in the best position to view the credibility of the witnesses, and found O'Brien credible and appellant not credible, we conclude the loan was for commercial purposes. For the foregoing reasons, the trial court did not err when it found it had jurisdiction to render a judgment and denied appellant's motion to vacate judgment.

{¶ 20} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____