[Cite as *Ashley v. Kevin O'Brien & Assocs. Co., L.P.A.*, 2023-Ohio-4677.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Stacia Ashley, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-81 |
| v. | : | (C.P.C. No. 16CV-1795) |
| Kevin O'Brien & Assoc. Co. LPA, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on December 21, 2023

**On brief:** *Kevin O'Brien & Assoc. Co.*, *L.P.A.*, and *Donn L. Costello*, for appellant.

**On brief:** *Ice Miller L.L.P.*, *John P. Gilligan*, and *Amy E. Flowers*, for appellee Stacia Ashley.

**On brief:** *Organ Law L.L.P.*, *Shawn J. Organ*, and *Ashley T. Merino*, for appellees Scott Torguson and Gregory Reichenbach.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendants-appellants, Kevin O'Brien ("O'Brien") and Kevin O'Brien & Associates Co., L.P.A. (the "O'Brien firm") (collectively, "appellants"), appeal the judgment of the Franklin County Court of Common Pleas denying their motion for sanctions against plaintiff-appellee, Stacia Ashley, and her former attorneys, appellees, Scott Torguson and Gregory Reichenbach.[1] For the following reasons, we affirm the trial court's judgment.

---

[1] Appellants originally also sought sanctions against attorney Jacqueline Gutter, but they dismissed Gutter after her limited involvement came to light during the hearing on the motion for sanctions. (Oct. 21, 2022 Mag.'s Decision at 2.)

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} This is a relatively straightforward case, which presents to this court only the question whether appellants are entitled to sanctions for frivolous conduct under R.C. 2323.51 as a result of Ashley suing appellants for violations of the Fair Debt Collections Practices Act ("FDCPA"); it is complicated only by the lengthy history of litigation between the parties, including no less than four appeals to this court, all stemming from the collection of a payday loan.

{¶ 3} In this case, filed in February 2016, Ashley sued appellants, alleging multiple violations of the FDCPA in appellants' attempts to collect on an unpaid loan from their client, 1st National Financial Services, Ltd. ("1st National"), to Ashley. The FDCPA case was stayed twice, first because O'Brien filed for bankruptcy and later to await this court's resolution of appeals in a case regarding the underlying debt. After this court resolved the final appeal regarding the underlying debt in 2019, Ashley voluntarily dismissed her FDCPA complaint. Two weeks later, however, appellants filed a motion for sanctions against Ashley and her attorneys, arguing that the filing of the FDCPA complaint constituted frivolous conduct under R.C. 2323.51. After holding an evidentiary hearing, a magistrate denied the motion for sanctions. The trial court then overruled appellants' objections to the magistrate's decision, which it adopted as the court's own. This appeal follows.

{¶ 4} Because Ashley's claims for violations of the FDCPA concern appellants' attempts to collect her debt to 1st National, we must examine the facts concerning the underlying debt and appellants' conduct in relation thereto to evaluate appellants' claim, pursuant to R.C. 2323.51, for sanctions for frivolous conduct.

### A. The debt, the collection actions, and the cognovit note

{¶ 5} In September 2014, on behalf of 1st National, appellants filed a complaint against Ashley in the Franklin County Municipal Court, Small Claims Division, to recover the amount due on a loan that 1st National made to Ashley under the Ohio Mortgage Loan Act, R.C. 1321.51, et seq. (Feb. 20, 2016 Compl. at ¶ 24-26, Ex. 1.) A Loan Repayment Agreement dated September 13, 2013 indicates that Ashley borrowed $1,998.31, with interest at 25 percent per annum, to be repaid in total by October 11, 2013. The 2014 complaint characterizes that case as a "consumer loan case." (Compl., Ex. 1 at 2.)

{¶ 6}   1st National dismissed its 2014 collection case after Ashley signed a cognovit promissory note on February 28, 2015, by which she agreed to pay the O'Brien firm, as 1st National's counsel, $1,423.70, with zero percent interest. (Compl., Ex. 2 at 4.) The note set forth the terms of repayment and stated, "The parties * * * *stipulate* and agree that this note represents the settlement of a commercial matter and that the instant note is *not given for a consumer loan, transaction or debt*." (Emphasis sic.) (Nov. 19, 2022 Def.s' Brief on Objs. at 2.) The cognovit note does not identify the underlying loan from 1st National to Ashley or the case number of the 2014 collection case, but the parties do not dispute that it was utilized as a settlement of that case. (*Id*. at 2; Dec. 5, 2022 Opp. & Resp. to Defs.' Purported Objs. at 7.)

{¶ 7}   On April 27, 2015, on behalf of 1st National, appellants filed a complaint against Ashley in the Franklin County Municipal Court to recover on the cognovit note, alleging that Ashley was in default under the agreed upon terms of repayment. (Feb. 20, 2016 Compl. at ¶ 42, Ex. 2; Def.s' Aug. 25, 2017 Mot. to Dismiss at 3.) On April 30, 2015, the municipal court entered judgment on the cognovit note against Ashley in the amount of $1,073.70 plus statutory interest of 4 percent per annum and court costs. The municipal court subsequently issued an order for Ashley's wages to be garnished to satisfy the judgment. Ashley alleged in her FDCPA complaint that appellants have retained from her garnished wages an amount greater than that due under either the terms of the cognovit note or under the April 30, 2015 judgment. (Feb. 20, 2016 Compl. at ¶ 55-56.)

**B. The motion to vacate the cognovit judgment**

{¶ 8}   In September 2015, Ashley filed a motion in the municipal court to vacate the cognovit judgment, arguing primarily that the cognovit note was invalid and the municipal court lacked jurisdiction to enter judgment because the note arose from a consumer loan. *See 1st Natl. Fin. Servs. v. Ashley*, 10th Dist. No. 16AP-18, 2016-Ohio-5497, ¶ 3 ("*Ashley I*"). The municipal court initially denied Ashley's motion as moot because 1st National had filed a notice captioned "Satisfaction of Judgment," stating that the judgment had been satisfied by the garnished funds. *Id*. at ¶ 6-7. Ashley appealed that judgment.

**C. The FDCPA complaint**

{¶ 9}   While the municipal court's judgment denying her motion to vacate the cognovit judgment was on appeal to this court in *Ashley I*, and while questions regarding

the consumer or commercial nature of Ashley's debt to 1st National, the validity of the cognovit note, and whether the trial court had subject-matter jurisdiction to enter judgment on the cognovit note remained unresolved, Ashley filed her FDCPA complaint. Ashley alleged that appellants' collection actions violated 15 U.S.C. 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1). (Feb. 20, 2016 Compl. at ¶ 60-66.)

{¶ 10} Ashley alleged that although appellants described the loan between 1st National and Ashley as a "consumer loan" in the 2014 collection complaint, *id.* at ¶ 25, they settled the matter by having her sign a cognovit note that "falsely stated that 'it represents the settlement of a commercial matter and * * * is not given for a consumer loan, transaction or debt," *id.* at ¶ 38, when "Ohio law forbids the use of a cognovit note to satisfy an obligation entered into for personal, family, educational or household purposes," *id.* at ¶ 39. Ashley alleged that an employee of the O'Brien firm told her she need not read the cognovit note, that she did not speak with the O'Brien firm on the day she signed the note, and that no one from the O'Brien firm discussed with her whether she had used the underlying loan from 1st National for a business purpose. *Id.* at ¶ 33, 35-36, 41. Ashley also alleged that appellants made false statements to the municipal court in the 2015 collection case regarding the nature of the underlying debt and the discussions between O'Brien and Ashley that preceded her signing of the cognovit note. *Id.* at ¶ 50. She maintained that the cognovit judgment was void, and that appellants recovered by garnishment more than would have been due under either the cognovit note or the 2015 judgment. *Id.* at ¶ 53, 56. She also alleged, more generally, that appellants "had a practice of suing consumer debtors * * * without any intention of prosecuting the case through a final hearing." *Id.* at ¶ 29.

{¶ 11} Appellants filed a motion to dismiss the FDCPA complaint pursuant to Civ.R. 12(B)(6), arguing that the doctrine of collateral estoppel precluded Ashley from arguing that her debt to 1st National was a consumer debt, because that question was resolved when the municipal court denied Ashley's motion to vacate the cognovit judgment.[2] They also argued that Ashley was equitably estopped from arguing that the debt was a consumer debt because she had stipulated otherwise in the cognovit note. The trial court converted appellants' motion to dismiss into one for summary judgment, but it then stayed the matter

---

[2] Appellants filed their motion to dismiss prior to the second appeal of the municipal court's denial of Ashley's motion to vacate judgment. Thus, the characterization of the underlying debt as consumer or commercial had not yet been finally determined.

pending resolution of appeals of the municipal court's judgment denying Ashley's motion to vacate.

### D. Appeals in the 2015 collection case

{¶ 12} In *Ashley I*, this court reversed the municipal court's judgment denying as moot Ashley's motion to vacate, because the municipal court did not examine whether it had subject-matter jurisdiction to enter the cognovit judgment, as Ashley had argued in her motion. *Ashley I* at ¶ 29. We acknowledged that a common pleas court lacks jurisdiction to enter judgment upon a warrant of attorney accompanying a cognovit note when " 'the relationship giving rise to the claim for relief involves a consumer transaction.' " *Id.* at ¶ 23, quoting *Patton v. Diemer*, 35 Ohio St.3d 68, 70 (1988).

{¶ 13} On remand, the municipal court again denied Ashley's motion to vacate after conducting an evidentiary hearing. This court again reversed the municipal court's judgment, however, this time holding that the trial court improperly placed on Ashley the burden of proving that the underlying loan was a consumer loan. *1st Natl. Fin. Servs. v. Ashley*, 10th Dist. No. 17AP-638, 2018-Ohio-3134 ("*Ashley II*"). We held that the municipal court "should have placed the burden on 1st National * * *, as the party seeking to invoke the court's jurisdiction," to establish the court's subject-matter jurisdiction. *Id.* at ¶ 14.

{¶ 14} Following the second remand from this court, the municipal court denied Ashley's motion to vacate a third time, and Ashley appealed yet again. In her third appeal, this court affirmed the municipal court's judgment. *1st Natl. Fin. Servs. v. Ashley*, 10th Dist. No. 18AP-803, 2019-Ohio-5321 ("*Ashley III*"). We did not afford determinative weight to the statement in the cognovit note that it represented the settlement of a commercial matter. Instead, we stated, "Lacking any documentary evidence outside of the cognovit instrument itself, the issue hinges almost entirely on the credibility of the witnesses." *Id.* at ¶ 18. We held that Ashley gave this court "no persuasive reason to question the trial court's" assignment of credibility to O'Brien's testimony that he explained to Ashley she could only execute the cognovit note if she had used the proceeds of the underlying loan for commercial purposes. *Id.* at ¶ 19. We stated, "Given the trial court was in the best position to view the credibility of the witnesses, and found O'Brien credible and [Ashley] not credible, we conclude the loan was for commercial purposes." *Id.*

**E. The motion for sanctions and the motion to disqualify the magistrate**

{¶ 15} Ashley voluntarily dismissed her FDCPA complaint without prejudice shortly after this court issued its decision in *Ashley III*, (Jan. 21, 2020 Notice of Dismissal), but approximately two weeks later, appellants filed a motion for sanctions against Ashley and her attorneys, pursuant to R.C. 2323.51. (Feb. 06, 2020 Def.s' Mot. for Sanctions at 1.) Appellants argued that Ashley's FDCPA claims "should never have been filed," because Ashley could not repudiate the settlement represented by the cognovit judgment or contradict the stipulation contained in the cognovit note that the underlying loan was not a consumer loan. *Id.* at 5-6. They reiterated arguments from their motion to dismiss that equitable estoppel barred Ashley from denying the validity of the cognovit note, and that execution of the cognovit note to settle the 2014 collection action extinguished the original loan and any claim based thereon. *Id.* at 7-11. The trial court referred the matter to Magistrate Mark Petrucci for a hearing. (Feb. 18, 2020 Order of Ref.)

{¶ 16} While their motion for sanctions remained pending, appellants filed a motion to disqualify Magistrate Petrucci. Based on statements the magistrate allegedly made during a status conference, appellants argued that the magistrate was biased or prejudiced against appellants. The trial court denied the motion to disqualify the magistrate.

{¶ 17} Following an evidentiary hearing, at which O'Brien was the only witness, the magistrate issued a decision, including findings of fact and conclusions of law, denying the motion for sanctions. The magistrate concluded that O'Brien did not establish a factual or a legal basis for holding that Ashley's filing of the FDCPA complaint constituted frivolous conduct. (Oct. 21, 2022 Mag.'s Decision at 9.) In particular, the magistrate noted that O'Brien's testimony addressed Ashley's FDCPA claims only vis-à-vis the cognovit note and did not touch on Ashley's other claimed violations of the FDCPA. *Id.* He concluded, "there was no controlling law on point that would show that the [FDCPA complaint] was not warranted under existing law," *id.* at 10, and O'Brien's belief that he would prevail on Ashley's claims was not evidence that those claims were frivolous, *id.* at 9. He also found no evidence that Ashley or her attorneys "filed the complaint to merely harass or maliciously injure" appellants. *Id.* at 10.

{¶ 18} Appellants filed timely objections to the magistrate's decision, which they supplemented with a brief, but they did not file a transcript of the sanctions hearing or an

affidavit of the evidence presented to the magistrate. The trial court overruled appellants' objections, adopted the magistrate's decision, and denied appellants' motion for sanctions. *Id.* at 5.

## II. ASSIGNMENT OF ERROR

{¶ 19} Appellants raise a single assignment of error, which states, "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR SANCTIONS." (Appellants' Brief at v.) Within that single assignment of error, however, appellants argue that (1) the municipal court had jurisdiction to enforce the cognovit note, (2) Ashley could not repudiate the cognovit note, (3) Ashley's claims against 1st National or appellants were merged into the settlement agreement/cognovit note, (4) Ashley is equitably estopped from denying the validity or terms of the cognovit note, (5) 1st National's release of its claim against Ashley bars her FDCPA claims, and (6) the trial court erred by overruling the motion to disqualify the magistrate. *Id.* at v.

## III. DISCUSSION

### A. Motion for sanctions

{¶ 20} A party to a civil action who is adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action. R.C. 2323.51(B)(1). R.C. 2323.51(A)(2) defines "frivolous conduct" as:

> (a) Conduct of [a] party to a civil action * * * that satisfies any of the following:
>
> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

Analysis of a claim for fees and expenses under R.C. 2323.51 requires the court to determine " '(1) whether an action taken by the party to be sanctioned constitutes "frivolous conduct," and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party.' " *Streb v. AMF Bowling Ctrs., Inc.*, 10th Dist. No. 99AP-633, 2000 Ohio App. LEXIS 1927, *11 (May 4, 2000), quoting *Ceol v. Zion Industries Inc.*, 81 Ohio App.3d 286, 291 (9th Dist.1992). A court may award fees and expenses under R.C. 2323.51(B)(1) against a party, the party's attorney, or both. R.C. 2323.51(B)(4).

{¶ 21} Appellants' motion for sanctions cites all four subsections of R.C. 2323.51(A)(2)(a), but it does not specify how particular conduct by Ashley and her attorneys satisfies any particular definition of "frivolous conduct." The thrust of the motion, however, seems to be that Ashley and her attorneys engaged in frivolous conduct by filing claims for violations of the FDCPA upon which appellants contend Ashley could not prevail. The magistrate found that, when asked at the sanctions hearing why O'Brien moved for sanctions, he responded, " 'this case should never have been filed' " (Oct. 21, 2022 Mag.'s Decision at 6), and when asked about the basis of his motion, he responded, "there was not law that would support" Ashley's claims, *id.* at 7.

{¶ 22} No single standard of review applies when an appellate court reviews a claim under R.C. 2323.51. *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 35. "[R]eview of a trial court's factual determinations is subject to deference and will not be disturbed where the record contains competent, credible evidence to support the trial court's findings." *Id.* On the other hand, a determination under R.C. 2323.51(A)(2)(a)(ii) that conduct is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law requires a legal analysis and is subject to de novo review. *Id.*

{¶ 23} R.C. 2323.51 does not include within the definition of frivolous conduct " 'the assertion of a claim or defense which is not well grounded in fact.' " *Fornshell v. Roetzel & Andres, L.P.A.*, 8th Dist. No. 92132, 2009-Ohio-2728, ¶ 72. In *Fornshell*, the court

recognized the danger that applying R.C. 2323.51 too broadly, particularly in cases where there is not a clear cut statutory violation, could unacceptably chill legitimate advocacy by discouraging an attorney from aggressively representing a client. *Id.* The test for determining whether the filing of a claim was frivolous under R.C. 2323.51(A)(2)(a)(ii) is whether " 'no reasonable attorney would have brought the action in light of the existing law.' " *Bennett v. Martin*, 10th Dist. No. 13AP-99, 2013-Ohio-5445, ¶ 18, quoting *Groves v. Groves*, 10th Dist. No. 09AP-1107, 2010-Ohio-4515, ¶ 17, citing *L & N Partnership v. Lakeside Forest Assn.*, 183 Ohio App.3d 125, 2009-Ohio-2987, ¶ 37 (10th Dist.). " ' "[A] claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim." ' " *Id.*

**{¶ 24}** Ashley alleged violations of seven sections of the FDCPA: 15 U.S.C. 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1). (Feb. 20, 2016 Compl. at ¶ 60-66.)

**{¶ 25}** 15 U.S.C. 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." It then lists 16 examples of such conduct. *See* 15 U.S.C. 1692(e)(1) through (16). The subsections cited in Ashley's complaint identify the following conduct as violations of 15 U.S.C. 1692e:

> (2) The false representation of - -
>
> (A) the character, amount, or legal status of any debt; or
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> * * *
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. 1692e.

{¶ 26} 15 U.S.C. 1692f states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt" and then goes on to list eight examples of such conduct.  15 U.S.C. 1692f(1), cited in Ashley's complaint, includes as an unfair or unconscionable means to collect or attempt to collect a debt "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### 1. The magistrate's decision

{¶ 27} In his decision, which contained findings of fact and conclusions of law, the magistrate acknowledged the two exhibits admitted at the hearing—a copy of the cognovit note and a copy of Ashley's FDCPA complaint and its attachments—and the parties' agreement that he could take judicial notice of filings in the collection cases. (Oct. 21, 2022 Mag.'s Decision at 1-2.)  The magistrate found that the docket "does not reflect filings indicative of a party engaged in frivolous conduct," *id.* at 6, and concluded that appellants did not meet their burden of establishing that the filing of the FDCPA complaint constituted frivolous conduct.  *Id.* at 8-9.  He stated there was no controlling law to show that the FDCPA complaint was unwarranted under existing law and that O'Brien "was unable or unwilling to provide evidence that 'no reasonable lawyer' would have filed the complaint or advanced the claims when the complaint was filed in 2016."  *Id.* at 10.  He concluded, appellants "had a burden to show that the complaint was frivolous, and Mr. O'Brien's testimony did not remotely prove that it was."  *Id.*  Instead, he concluded that the FDCPA complaint was "timely filed [and] rais[ed] existing" violations of the FDCPA.  *Id.*  The magistrate also concluded that appellants did not establish that Ashley's complaint was frivolous because O'Brien's testimony only addressed the FDCPA claims stemming from the cognovit note.  *Id.* at 9.  He stated that, since a single statutory violation is sufficient to support an FCDPA claim, appellants "had a duty to address all of [Ashley's] claims[,] and they failed."  *Id.*  Finally, the magistrate found no evidence that Ashley, or her counsel, filed the FDCPA complaint merely to harass or maliciously injure appellants.  *Id.*

### 2. Civ.R. 53

{¶ 28} A party may file written objections to a magistrate's decision within 14 days of the filing of the decision. Civ.R. 53(D)(2)(b)(i). Objections must be "specific and state with particularity all grounds for objection." Civ.R. 53(D)(2)(b)(ii). A party who files objections to a magistrate's factual findings generally must support those objections with a transcript of all the relevant evidence submitted to the magistrate. Civ.R. 53(D)(3)(b)(iii) states:

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available.

{¶ 29} A court may adopt a magistrate's decision to which no objections have been filed, "unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). If objections are timely filed, however, the trial court must rule on them by undertaking "an independent review as to the objected matters to ascertain that the magistrate properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). When an objecting party fails to support objections to a magistrate's factual findings as required by Civ.R. 53(D)(3)(b)(iii), though, " 'the trial court may properly adopt [the] magistrate's factual findings without any further consideration.' " *Black v. Columbus Sports Network, LLC*, 10th Dist. No. 13AP-1025, 2014-Ohio-3607, ¶ 16, quoting *Estate of Stepien v. Robinson*, 11th Dist. No. 2013-L-001, 2013-Ohio-4306, ¶ 28, citing *Lincoln S. & L. Assn. v. Damron*, 4th Dist. No. 02CA4, 2003-Ohio-2596, ¶ 23. It may then "examine only the magistrate's legal conclusions based upon those facts." *Dale v. Ohio State Hwy. Patrol*, 10th Dist. No. 04AP-639, 2005-Ohio-3383, ¶ 18.

{¶ 30} An objecting party's failure to file a transcript restricts the scope of review not only by the trial court, but also on appeal. *Black* at ¶ 15. " '[W]here a party files objections to a magistrate's decision in the trial court, but does not support those objections with a transcript * * *, that party is precluded from arguing on appeal that the trial court erred in its factual determinations.' " *Id.*, quoting *Gill v. Grafton Corr. Inst.*, 10th Dist. No. 09AP-1019, 2010-Ohio-2977, ¶ 14. In such circumstances, an appellate court's review is limited

to determining "whether the trial court abused its discretion in applying the law to the magistrate's findings of fact." *Dale* at ¶ 18.

### 3. Appellants' objections

{¶ 31} Appellants did not identify in their objections any particular findings of fact or conclusions of law to which they objected; indeed, as the trial court noted, appellants did not include a single citation to the magistrate's decision. Appellants instead rehashed the same legal arguments they have made before—in their motion to dismiss, in their motion for sanctions, and in response to Ashley's motion to vacate, as well as on appeal in the 2015 collection action. As set out in their trial brief on objections, appellants' objections parallel the issues listed under their assignment of error here. They state:

> 1. Defendants' Settlement with Ashley was Legally Appropriate; the Municipal Court Always Had Jurisdiction to hear 1st National's Cognovit Promissory Note Case.
>
> 2. Ashley Settled her 2014 Lawsuit with 1st National by Way of a Cognovit Promissory Note; a Settlement is a Contract which Cannot be Repudiated by Either Party.
>
> 3. Ashley Settled her 2014 Municipal Court Case with 1st National; Any Claims which she had Against 1st National and O'Brien were Merged Into the Settlement Agreement.
>
> 4. Ashley is precluded by the Doctrine of Equitable Estoppel from Denying the Validity and Terms of the Cognovit Promissory Note She Signed.
>
> 5. 1st National Garnished Ms. Ashley's Wages and Secured All of the Money Due Under the Terms of the Cognovit Promissory Note; 1st National Released its Claim Against Ashley by Filing a Satisfaction of Judgment; the Release of 1st National's Claim Against Ashley is an Absolute Bar to Any Subsequent Action Regarding that Claim, Including Ashley's FDCPA Claim Against O'Brien.
>
> 6. O'Brien Objects and Renews his Motion to Disqualify Magistrate Petrucci; Petrucci Improperly Circumscribed the Hearing; Petrucci Would Not Consider Evidence From the 2014 and 2015 1st National Cases against Ashley; Petrucci was Openly Hostile Toward O'Brien and Told the Parties How the Case Would Conclude.

(Sic passim.)  (Nov. 19, 2022 Defs.' Brief on Objs. at 1-5, 8.)  Appellants did not support their objections with a transcript of the evidentiary hearing on their motion for sanctions, nor did they file an affidavit of the evidence presented to the magistrate.

    **1.  The trial court did not err in overruling appellants' objections**

{¶ 32}  The sole issue before the magistrate when deciding appellant's motion for sanctions was whether Ashley and/or her counsel engaged in frivolous conduct under R.C. 2323.51(A)(2) by filing the FDCPA complaint.  If they did not, the magistrate's analysis was at an end, and he would have been obligated to deny appellants' motion.

{¶ 33}  First, to the extent appellants challenged any of the magistrate's findings of fact, the trial court appropriately overruled those objections, based on appellants' failure to file a transcript.  (Jan. 6, 2023 Decision & Entry at 3.)  *See Black*, 2014-Ohio-3607, at ¶ 15. A trial court may properly adopt a magistrate's factual findings and overrule objections thereto without any further consideration when the objecting party does not support the objections in the manner prescribed in Civ.R. 53(D)(3)(b)(iii).  *Id*.  This includes the trial court's factual findings that the reason for appellants' motion for sanctions was a belief that the law did not support Ashley's claims; that Ashley alleged FDCPA claims separate from those based on the validity of the cognovit note; that "[t]he docket does/did not reflect findings indicative of a party engaged in frivolous conduct"; and that O'Brien's testimony was not credible.  (Oct. 21, 2022 Mag.'s Decision at 6.)

{¶ 34}  After appropriately adopting the magistrate's factual findings, the trial court concluded that O'Brien failed to state his objections to the magistrate's legal conclusions with the specificity required by Civ.R. 53(D)(3)(b)(ii), noting O'Brien's failure to identify in his objections the specific conclusions of law to which he objects.  (Jan. 6, 2023 Decision & Entry at 4.)  O'Brien does not tie his broad arguments regarding the use of a cognovit note to settle 1st National's 2014 collection action to specific conclusions of law in the magistrate's decision.  A failure to file specific objections is treated the same as a failure to file any objections.  *In re A.P.*, 10th Dist. No. 22AP-62, 2022-Ohio-4295, ¶ 27, citing *In re C.P.*, 12th Dist. No. CA2010-12-025, 2011-Ohio-4563, ¶ 34.  *See also State ex rel. Williams v. Ohio Adult Parole Auth.*, 10th Dist. No. 22AP-662, 2023-Ohio-850, ¶ 3.  But the trial court then went on to hold that, even if O'Brien had specifically objected to the magistrate's

decision, his objections would not be well-taken, because the magistrate applied the appropriate law to the findings of fact. We agree on both fronts.

{¶ 35} In her complaint, Ashley alleged that appellants violated the FDCPA in its efforts to collect on a consumer debt, which ultimately resulted in a cognovit judgment against Ashley. Although this court ultimately affirmed the municipal court's denial of Ashley's motion to vacate the cognovit judgment in *Ashley III*, we did not decide *Ashley III* until almost four years after Ashley filed her FDCPA complaint. In the first appeal from the trial court's denial of Ashley's motion to vacate, we implicitly rejected appellants' argument that the stipulation in the cognovit note itself was determinative of the character of the underlying debt when we remanded the matter for an evidentiary hearing to determine whether the municipal court had subject-matter jurisdiction to enter judgment on the cognovit note. Additionally, the magistrate here found that O'Brien had acknowledged that Ashley's loan from 1st National was recorded on a form that identified it as a consumer transaction and that he had likewise previously characterized it as a consumer loan. (Mag.'s Decision at 6.) The 2014 collection complaint, filed by appellants and signed by O'Brien, itself in fact expressly states that the action was a "consumer loan case." (Feb. 20, 2016 Compl., Ex. 1 at 2.) This court's ultimate ruling in *Ashley III* that the cognovit note did not arise out of a consumer transaction does not render Ashley's allegation to the contrary, made four years earlier, frivolous.

{¶ 36} Appellants do not support with any clear, on-point legal authority their assertion that, regardless of whether the loan from 1st National to Ashley was a consumer loan when made, the execution of a cognovit note to settle the 2014 collection action converted the matter into a commercial transaction and thereby stripped from Ashley any consumer protections to which she may be afforded under the law. Nor do appellants address in their objections whether a debt collector's use of cognovit note to settle a debt that the debt collector had previously acknowledged as a consumer debt is itself a violation of the FDCPA. Even so, the appellants might have a valid defense to Ashley's FDCPA claims does not necessitate a determination that those claims were frivolous when filed. Indeed, that question would have been one of first impression in Ohio had Ashley's complaint proceeded to trial.

{¶ 37} Appellants' reliance on *Bd. of Commrs. v. Samuelson*, 24 Ohio St.3d 62 (1986), for the proposition that execution of the cognovit note resulted in a merger of any claims Ashley had against 1st National or appellants into the cognovit note, is misplaced. *Samuelson* involved a settlement agreement executed after an entry of judgment against the appellants and uncontroversially held only that the settlement agreement, which the parties intended "to settle their dispute and end the litigation," satisfied the preexisting judgment. *Id.* at 63. Even assuming that Ashley and 1st National's rights and obligations under the original loan were merged into their rights and obligations under the cognovit note, so as to preclude a claim to enforce the original loan, nothing in the cognovit note purports to release potential claims by Ashley that appellants violated the FDCPA in their actions to collect on the debt, including a claim that appellants' use of the cognovit note itself constituted a violation of the act.

{¶ 38} The fact that 1st National recovered on Ashley's debt through a garnishment of her wages does not preclude Ashley from maintaining her independent claims for violations of the FDCPA by appellants, and appellants have cited no on-point legal authority for their argument to the contrary. Appellants made a similar "mootness" argument in *Ashley I*, in which they argued that satisfaction of the cognovit judgment rendered moot Ashley's appeal from the denial of her motion to vacate. *Id.* at ¶ 28. We held, however, that satisfaction of the judgment did not render her appeal moot if the trial court lacked jurisdiction over the cognovit case to begin with—a question the trial court had not addressed. *Id.*

{¶ 39} Here, appellants go further and argue that the satisfaction of judgment prevents Ashley not just from challenging the underlying judgment, but also from claiming that appellants violated the FDCPA in their attempts to collect on the debt. In their objections, appellants cited *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13 (1990), which stands for the unremarkable proposition that "[a] release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Id.* at 13, citing *Perry v. M. O'Neil & Co.*, 78 Ohio St. 200 (1908). A claim for a violation of the FDCPA, however, is entirely independent of an action to recover an underlying debt and cannot be said to be "encompassed" within a release of 1st National's claim to recover from Ashley upon satisfaction of its judgment. A finding that settlement or payment of an

underlying debt implicitly releases the debtor's right to sue for a violation of the FDCPA "would produce consequences squarely at odds with the statute's public-policy goal of preventing 'abusive, deceptive, and unfair debt collection practices.' " *Werbicky v. Green Tree Servicing, LLC*, D.Nevada No. 2:12-cv-01567-JAD-NJK, 2016 U.S. Dist. LEXIS 40327 (Mar. 28, 2016), quoting 15 U.S.C. 1692.

{¶ 40} Finally, putting aside the question of the cognovit note and the characterization of the underlying loan as a consumer or a commercial loan, the magistrate found that O'Brien offered no testimony from which it could be determined that Ashley's claims for other violations of the FDCPA were frivolous. For example, Ashley alleged that appellants garnished and retained funds in excess of the amount due under either the cognovit note or the judgment entered thereon, and that appellants have not returned the overpayments. Under 15 U.S.C. 1692f(1), the collection of any amount that is not authorized by the agreement creating the debt, or authorized by law, constituted an unfair or unconscionable means to collect or attempt to collect a debt. Although appellants disputed Ashley's allegations regarding overpayment, the trial court did not have, and we do not have, a transcript of the sanctions hearing, and we therefore have no basis upon which to disregard the magistrate's conclusion that appellants presented no evidence to demonstrate that Ashley's allegations in that regard were frivolous.

{¶ 41} Accepting as we must the magistrate's findings of fact, as adopted by the trial court, we conclude that the trial court did not abuse its discretion in applying the law to the magistrate's findings of fact.

### B. Motion to disqualify

{¶ 42} Appellants' final argument is that the trial court erred by denying their motion to disqualify the magistrate and in refusing to reconsider that decision when appellants asked the court to do so in their objections to the magistrate's decision.

{¶ 43} Less than two weeks after appellants filed their motion for sanctions, the trial court referred the matter to Magistrate Petrucci for a hearing. Following a spate of discovery motions and appellants' unsuccessful appeal from the trial court's non final order denying their motion to enjoin discovery, *see Ashley v. Kevin O'Brien & Assocs. Co., L.P.A.,* 10th Dist. No. 20AP-354, 2022-Ohio-24, the magistrate held a status conference on

February 18, 2022. Six months later, appellants filed a motion pursuant to Civ.R. 53(D)(6) to disqualify Magistrate Petrucci from hearing their motion for sanctions.

{¶ 44} Pursuant to Civ.R. 53(D)(6), a party may file a motion to disqualify a magistrate "for bias or other cause." In support of their motion, appellants argued that the magistrate "made several biased remarks" during the February 2022 status conference. (Aug. 31, 2022 Mot. to Disqualify at 2.) Specifically, they claimed the magistrate stated he would not consider evidence regarding 1st National's collection cases, improperly suggested that Ashley's counsel filed the FDCPA case to comply with the one-year statute of limitations on such claims, and urged appellants to consider dismissing their motion for sanctions. *Id.* Appellants argued, based primarily on their belief in the unimpeachable validity of their frivolous conduct claim, that the magistrate's comments indicated that he "harbor[ed] a hostile feeling or spirit of ill will against [appellants]," and "plainly announced the decisions he [would make] despite the facts and the law." *Id.* at 6.

{¶ 45} When used in reference to a judge before whom a matter is pending, the phrase "biased or prejudiced" " 'implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' " *In re Disqualification of O'Neill*, 100 Ohio St.3d 1232, 2002-Ohio-7479, ¶ 14, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956). A magistrate is presumed *not* to harbor bias or prejudice toward or against a party. *Powell v. Lawson*, 10th Dist. No. 18AP-289, 2019-Ohio-4993, ¶ 9, citing *Melick v. Melick*, 9th Dist. No. 26488, 2013-Ohio-1418, ¶ 9. Thus, the party alleging bias and seeking disqualification of a magistrate bears the burden to produce adequate evidence to overcome the presumption of the magistrate's integrity. *Id.* Mere disagreement with a magistrate's ruling does not demonstrate bias or prejudice. *Id.*, citing *In re Disqualification of Corrigan*, 105 Ohio St.3d 1243, 2004-Ohio-7354, ¶ 9.

{¶ 46} Removal of a magistrate falls within the discretion of the judge who referred the matter to the magistrate. *In re Disqualification of Wilson*, 77 Ohio St.3d 1250, 1251 (1996). An appellate court reviews a trial court's ruling on a motion for disqualification for an abuse of discretion. *Lingenfelter v. Lingenfelter*, 9th Dist. No. 15AP0062, 2017-Ohio-235, ¶ 9, citing *Lingenfelter v. Lingenfelter*, 9th Dist. No. 14AP0005, 2015-Ohio-4002, ¶ 10.

{¶ 47} Here, the trial court denied appellants' motion to disqualify Magistrate Petrucci because it found both that appellants failed to support their motion with evidence and that appellants' factual claims, even if supported by evidence, did "not overcome the presumption of integrity." (Sept. 27, 2022 Entry at 2.)

{¶ 48} Appellants submitted no evidence in support of their motion to disqualify. The record contains neither a transcript of the February 2022 status conference at which appellants allege the magistrate made statements that indicated his bias against appellants nor an affidavit or other evidence to establish that such statements were made.[3]  In *Angus v. Angus*, 10th Dist. No. 15AP-655, 2016-Ohio-7789, ¶ 20, this court overruled an assignment of error challenging the trial court's denial of a motion to disqualify a magistrate based on the magistrate's alleged oral statements: "without a transcript establishing that the magistrate actually said what [the appellant] alleges, [the appellant] does not have adequate evidence to overcome the presumption against bias."  *See also Melick* (party seeking disqualification based on an alleged conversation between magistrate and attorneys failed for lack of evidence to substantiate the allegation).  Furthermore, to the extent appellants argue that the magistrate's purported bias or prejudice is evidenced by a refusal to allow evidence regarding the collection cases against Ashley, that argument is precluded by appellants' failure to file a transcript of the sanctions hearing.

{¶ 49} Appellants obviously disagree with the magistrate's alleged statement that Ashley and her counsel may have filed the FDCPA claims to avoid a lapse of the relevant statute of limitations and the magistrate's alleged skepticism of the merits of appellants' frivolous conduct claims.  But appellants' disagreement, standing alone, does not demonstrate bias or prejudice. *See Columbus v. Flowers*, 10th Dist. No. 19AP-423, 2019-Ohio-5205, ¶ 27, citing *Fifth Third Mtge. Co. v. Berman*, 10th Dist. No. 17AP-563, 2019-Ohio-1068, ¶ 44.  "A trial judge's opinions of law, even if erroneous, are not by themselves evidence of bias or prejudice and thus are not grounds for disqualification."  *In re Disqualification of Murphy*, 36 Ohio St.3d 605 (1988).  As we stated in *Angus*, "a motion to disqualify does not provide a forum for a party to collaterally attack the merits of a magistrate's factual findings or legal conclusions." *Angus* at ¶ 23.

---

[3] After Ashley and her counsel filed a memorandum in opposition to the motion to disqualify, appellants filed an affidavit from O'Brien, which set out many of the unsworn statements from appellant's motion, but they did not seek leave of court to file the untimely affidavit, and the trial court did not consider it.

{¶ 50} As appellants cited no evidence upon which the trial court could determine that the magistrate was biased or prejudiced against appellants, there is similarly no record evidence upon which this court could rely to conclude that the trial court abused its discretion in holding that appellants did not overcome the presumption of integrity and in denying appellants' motion to disqualify the magistrate.

## IV. CONCLUSION

{¶ 51} For these reasons, we overrule appellants' sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and EDELSTEIN, JJ., concur.

———————————